J^LeBLANC, J.
This is an appeal by the plaintiff, Janet Hamblen, individually and as tutrix of her quadriplegic minor son, David Wayne Fag-gard, from a judgment of dismissal rendered by the trial court in favor of the defendants, Hospital Service District No. 1, the owner and operator of Terrebonne General Medical Center and Kevin J. Por-tier, hereinafter referred to as TGMC, on the basis of plaintiffs counsel repeated failure to ignore a motion to compel discovery documents.
Procedural Background
On January 15, 1998, TGMC filed a petition to initiate discovery subsequent to plaintiffs filing a medical review proceeding. TGMC immediately began discovery by way of scheduled depositions and requests for production of documents to various medical providers as well as to the plaintiff. The record reveals that on June 9, 1998, plaintiff received TGMC’s request for production of documents.[2] On June 24, 1998, TGMC wrote a demand letter to plaintiffs counsel (Brooks), for the overdue responses to the prior request. The letter noted the importance of the requested documents (medical release authorizations) and indicated a motion to compel would be filed if the requests were not answered promptly. On September 1, 1998, TGMC sent interrogatories via certified mail to Brooks, and again requested responses to the prior overdue requests for production of documents. The record reveals that the interrogatories were received by Brooks on September 8, 1998. Despite yet another demand letter for responses sent to Brooks on September 28, 1998, plaintiff failed to respond to the discovery requests.
| .¡Therefore, on October 13, 1998, TGMC filed a motion and order to compel discovery responses, which was set for hearing on December 4, 1998, more than a month and a half later; still, no responses from plaintiff were made. Inexplicably, neither plaintiff nor plaintiffs counsel, Brooks, appeared for the hearing on the motion to compel. Counsel for TGMC appeared and explained at the hearing that the afternoon *1216 of the 3rd (the prior day) he received a fax of “purported” answers to the discovery requests from plaintiffs counsel which were incomplete and non-responsive. Furthermore, no responses at all were submitted for six interrogatories and two production of documents requests. Counsel for TGMC stated that he faxed Brooks regarding the incompleteness of the responses and did not hear anything further. The trial court granted the motion ordering plaintiff to respond to the discovery requests within forty days, or by January 14, 1999, and assessed attorney’s fees in the amount of $400.00 against Brooks.
On January 15, 1999, TGMC sent another letter to Brooks again requesting answers to its discovery requests, specifically detailing the incompleteness and non-responsiveness of the answers provided by the plaintiff and demanding payment of the $400.00 attorney’s fees assessed by the court. The Tetter indicated that if response was not made by January 25, 1999, a motion and order for contempt would be filed.
When no response was made, TGMC filed a motion and order for contempt and/or to dismiss, which motion was set for hearing on March 5, 1999. Brooks made an appearance at this hearing, and in response to the judge’s questioning regarding his failure to pay the $400.00 assessed at the prior hearing, he simply alleged his belief that the judgment was invalid on its face. (Inexplicably, counsel for plaintiff did not take writs or appeal the first judgment.) When questioned about the discovery requests, Brooks continued to maintain that he had answered them; with regard to the incomplete and non-responsive answers, Brooks told the judge that he had ^received a letter from plaintiffs alleged new counsel, to whom he had sent the entire file, including all discovery requests. However, upon further questioning from the court, including a recess during which the court ordered a faxed copy of the letter sent to Brooks by the alleged new counsel to be produced, none of Brooks’ allegations were substantiated. Indeed, the court found that clearly the “new counsel” was merely reviewing the case, and had not been hired by plaintiff. Noting that Brooks had not filed a motion to withdraw, and no motion to enroll had' been filed by the alleged new counsel, the trial court found Brooks obligated by the prior judgment, of which he was in contempt, and assessed an additional $600.00 in attorney’s fees against him. The court continued the remainder of the rule, regarding the continuing request for supplemental discovery answers and a request for dismissal, and fixed it for hearing on March 26,1999.
On March 24,1999, two days prior to the second hearing date on TGMC’s motion and order for contempt and to dismiss, plaintiff filed an “answer” by way of an attached affidavit that had been executed by Ms. Hamblen. The affidavit, which we deem insufficient for reasons discussed more fully below, contains assertions by Ms. Hamblen purporting to excuse all of Brooks’ deficiencies in refusing to respond to discovery requests by the fact that Hamblen, who was overburdened by the care required of her son, had been unable to assist Brooks in making the responses.
The second hearing on the motion for contempt and/or to dismiss was held on March 26, 1999. Despite numerous verbal assurances made by Brooks in open court at the prior hearing to defense counsel to meet him in the hallway so Brooks could pay the entire $1000 fee assessed against him, the record reveals that at the time of the second hearing, Brooks still had not paid the fine or responded to the discovery requests as ordered by the court. Given an opportunity to add “anything that you might have in addition to what you’ve already submitted,” Brooks merely relied on the previously | ^submitted affidavit. The trial court promptly ordered the matter dismissed. This appeal, of the judgment of dismissal and the prior judgment impos *1217 ing sanctions, follows.[3]
Analysis
Incredibly, on appeal Brooks asserts that he “at no time violated an Order to compel discovery,” and argues that the trial court erred in imposing sanctions against him and in dismissing the plaintiffs case. The record before us makes abundantly clear the complete inaccuracy of these assertions.
Louisiana Code of Civil Procedure Article 1471, entitled “Failure to comply with order compelling discovery; sanctions” governs the situation. Article 1471 provides that if a party fails to obey an order to permit discovery, including an order compelling discovery made pursuant to La. C.C.P. art. 1469, the court may make such orders in regard to the failure as are just, including that specified in section (3) of Article 1471 as follows:
An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any pant thereof, or rendering a judgment by default against the disobedient party. (Emphasis added)
The article further provides that,
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, | fiincluding attorney’s fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award Of expenses unjust.
Again, the record reveals a complete absence of any justification for the blatant failure of plaintiffs counsel to comply with three separate orders of the court. Accordingly, the imposition of sanctions against Brooks is wholly supported by both the record and applicable law.
The question regarding the propriety of the court’s dismissal of plaintiffs case, insofar as it unduly and harshly penalizes the plaintiff, Hamblen, for the failures and inadequacies of her counsel, is not so clear cut. In Horton v. McCary, 93-2315, p. 10 (La.4/11/94), 635 So.2d 199, 203, our supreme court stated the penalties of dismissal and default provided by Article 1471 are “draconian penalties which should be applied only in extreme circumstances.” One of the four factors to consider before taking such a drastic measure is “whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney.” Horton, 93-2315 at p. 11, 635 So.2d at 203. Furthermore, the court noted that dismissal is generally reserved for those cases in which the client, as well as the attorney, are at fault. Id.
The only evidence in the record that Brooks’ failure to respond to the discovery requests and the court’s orders was in any way attributable to the plaintiff, Hamblen, is her sworn affidavit submitted in answer to the motion for contempt. Our review of this affidavit .reveals grave concerns regarding its credibility. It appears to have been sworn to and subscribed before Brooks himself. As stated earlier, in the affidavit, Hamblen purports to shoulder the blame for Brooks’ failure *1218 to respond to the discovery requests. She asserts that the burden of caring for her quadriplegic son prevented her from supplying her attorney with the requested discovery responses. We find there is a potential conflict of interest in an affidavit wherein a client, |7perhaps unwittingly, shoulders the blame for the derelictions of her attorney, and such affidavit is attested to by that same attorney. At best, it raises questions regarding the accuracy of communication between attorney and client, particularly in light of the other questionable aspects of the affidavit, detailed below.
First, we find the assertion that Ham-blen is singly to blame for the failure to respond is unreasonable given the facts and circumstances of this case, including that the repeated demands and requests were flatly ignored by Brooks, who did not even attempt to explain he was encountering difficulties in obtaining the responses from his client. Indeed, Brooks’ failure to appear at the first hearing on the motion to compel has never been explained nor excused. Furthermore, throughout the pendency of the hearings, Brooks continued to maintain that he had answered the requests, rather than attempt to explain that he was having difficulty obtaining Hamblen’s cooperation. Finally, the unreasonableness of the affidavit’s attempt to place the blame for Brooks’ shortcomings on Hamblen is borne out by the fact that Brooks was able to obtain her signature on this affidavit, but still did not provide the long requested signed medical release authorizations. If Brooks was able to obtain her signature for an affidavit shouldering the blame for the failure to provide this information, why then was he still unable to obtain her signature on the requested documents? An explanation for this has not even been attempted.
Additionally, on its face, we must question the veracity of the assertions made in the affidavit. First, paragraphs 5, 7, 8, 9 and 13 of the affidavit address hearsay information regarding conversations between her attorney and defense attorney, of which Hamblen clearly had no first hand knowledge. Second, paragraph 10 of the affidavit states: “She is unemployed and has no way of paying the fine imposed.” This assertion causes us to question the accuracy and veracity of the information exchanged between | ^Brooks and Hamblen. The record reveals that the imposition of fines was always clearly and unambiguously directed at Brooks, individually, and not at Hamblen: thus, we have serious doubts regarding the informed nature of the assertion in paragraph 10.
Finally, even if we were to accept that the failure to respond was due to Ham-blen’s inability to do so, there still has been no explanation offered for why this excuse was not presented until the motion for contempt and/or dismiss had been filed, when repeated requests prior to that time had been ignored.
Therefore, we find the affidavit is wholly insufficient to establish that the failure to respond in this case was due to anything other than the dereliction of Brooks’ duties as plaintiffs counsel. Even despite her own assertions to the contrary, the record fails to convince us that there was any willfulness, bad faith or fault on the part of the plaintiff for the inactions of her attorney. Although the trial court has wide discretion in fashioning a remedy pursuant to those provided in La. C.C.P. art. 1471, the record must contain sufficient evidence of plaintiffs willful disobedience, bad faith, or fault, in order to justify the dismissal. If the record does not contain evidence of plaintiffs, rather than counsel’s fault, the trial court, if it grants dismissal, abuses the wide discretion afforded it by La. C.C.P. art. 1471. Brumfield v. Lallie Kemp Charity Hosp., 551 So.2d 741, 742 (La.App. 1 Cir.1989). This is such a case.
Accordingly, we affirm the judgment imposing sanctions against Brooks and add attorney’s fees for the handling of this appeal in the amount of $2,500.00, together with costs; we reverse the judgment dis *1219 missing plaintiffs action, and remand this matter to the trial court for further proceedings consistent herewith. We further order that the plaintiff, whether through Brooks or new counsel, provide the remaining answers to the l9discovery requests at issue no later than thirty days from the date of this judgment.
AFFIRMED IN PART; REVERSED IN PART, AND REMANDED, WITH ORDER.

. The record reveals that TGMC attempted to issue discovery documents to the plaintiff through counsel as early as May 6, 1998; however, those documents, which were sent certified mail, were unclaimed by plaintiffs counsel. Ultimately, a second request was sent certified mail and was claimed by plaintiffs counsel on June 9, 1998.

. The trial court, additionally on its own motion, ordered Brooks to show cause on April 23, 1999, why he should not be held in constructive contempt for the "willful disobedience” of the court's prior orders.
At the April 23, 1999 hearing, Brooks established that, finally, approximately one week prior to the hearing, he paid the $1000 assessment against him. In defense of his blatant failure to comply with discovery requests, Brooks merely apologized to the court and requested “some measure of mercy” from the court in consideration of his assertion that in 32 years of practice, he had never been sanctioned and in light of his intention to retire in three years.
The trial court found Brooks to be in willful contempt of court and sentenced Brooks to serve 24 hours in the parish prison and pay a fine of $5; the time to be served was suspended on condition that Brooks pay the $5 fine and all costs of the rule.