649 So.2d 129 (1995)
Jimmy W. YOCUM, Plaintiff-Appellant,
v.
CITY OF MINDEN, et al., Defendants-Appellees.
No. 26424-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1995.
*130 Hal V. Lyons, Shreveport, for appellant.
Crawford & Anzelmo by Donald J. Anzelmo, Monroe, Mayer, Smith & Roberts by Mark A. Goodwin, Hicks & Hubley by Michael S. Hubley, Shreveport, for appellee.
Before SEXTON and STEWART, JJ., and CULPEPPER, J. Pro Tem.
STEWART, Judge.
Jimmy W. Yocum, former employee of Cajun Contractors and Engineers, Inc., was severely injured when he was struck by two clods of clay which broke free from the side of an excavation ditch where he worked. Yocum filed suit for damages, contending that an engineering firm, Owen & White, Inc., failed to correct or report the unsafe slope of the ditch. After a bench trial, the court dismissed Yocum's claims. The court ordered third party defendant, Cajun, to pay $10,000 in attorney's fees to third party plaintiff, Owen & White, Inc. Yocum was assessed court costs and $300 in expert witness fees. Yocum appeals, arguing that Owen & White's employee, Carey Hardin, was negligent in failing to observe, warn of, report, or correct an unsafe condition. Owen & White contends that the trial court did not allow for full indemnification of its legal expenses and that Yocum and his company's worker's compensation carrier, Lumbermen's Mutual Casualty Company, should have been obligated in solido for the payment of court costs and expert witness fees. We amend and affirm.

*131 FACTS
Plaintiff, Jimmy W. Yocum worked for Cajun Contractors and Engineers, Inc. as a pipefitter. Cajun was under contract with the City of Minden to construct a wastewater treatment plant. The City of Minden also entered into a contract with Benson Construction Company for the installation of several miles of interceptor sewer lines to operate in conjunction with the wastewater treatment plant. The City of Minden also contracted with Owen & White, Inc. to provide engineering consultation for both projects. An Owen & White employee and engineer, Carey Hardin, was the resident project representative.
According to the contract documents, Hardin's job as resident project representative was to conduct on-site observations to ensure that the project progressed according to plan and in conformity with the contract. The contract did not authorize him to direct the contractor to cease operations or to in any way instruct the contractor as to its means, methods and safety operations. He spent most of his time working on the aspect of the project involving the installation of several miles of interceptor sewer lines. However, he often completed his paper work in a trailer on the excavation site.
On Monday, March 31, 1986, Yocum was working in an excavation ditch at the plant site, fitting PVC pipes for the underground sewerage system when two large clods of clay dislodged from one side of the ditch. Both clods struck Yocum. Irvin Fiscus, a trackhoe operator employed by Cajun witnessed the accident and testified that the first clod to roll down the side of the embankment hit Yocum and knocked him across the eight inch PVC pipe on which he worked, forcing his head into a hole containing water and leaving his knees bent upward. The second clod immediately followed and pinned Yocum's right leg against his back. As a result, Yocum's back and leg were broken.
Hardin testified that he could not remember whether he went to the site on the Monday morning of the accident. He did, however, navigate a slope of the excavation ditch near the accident site on the Thursday or Friday prior to the accident. At that time, he considered the sides of the ditch to be adequately sloped.
Yocum filed a personal injury suit against Owen & White and its insurer, Continental Casualty Company, alleging that Hardin was liable for failing to correct, report, or warn of the dangerous condition which would have been apparent to a competent engineer exercising due care. Lumbermen's Mutual Casualty Company, the subrogated worker's compensation insurer of Cajun intervened, seeking recovery for medical expenses and indemnity benefits it paid in response to Yocum's worker's compensation claim. Owen & White filed a third party demand against Cajun and its insurer, Bituminous Fire and Casualty Insurance Company.
The trial court held that Owen & White bore no legal or moral duty to warn of the condition of the ditch and that there was no connection between the injury sustained by Yocum and the work performed by Owen & White. Thus, the trial court dismissed Yocum's claims at his cost. Additionally, the court found that Cajun had been negligent in act or omission, thereby causing Yocum's accident. As a result, the court found that Owen & White was entitled to indemnification by Cajun in the amount of $10,000.

DISCUSSION

Liability of Owen & White
Yocum's contention on appeal is that the trial court erred in not holding Owen & White liable for the dangerous slope of the ditch. He advances three arguments on this issue: that the trial court was clearly wrong in stating that Hardin had a duty to warn only if he had actual knowledge of the danger, that the court was presented with evidence sufficient to show that Hardin had actual knowledge of the danger, and that the contract between Owen & White and the City of Minden shielded Owen & White from liability in a manner contrary to law.
Duty is a question of law. Harris v. Pizza Hut, 455 So.2d 1364 (La.1984); Crane v. Exxon Corp., U.S.A., 613 So.2d 214 (La.App. 1 Cir.1992). The particular facts and circumstances of each individual case *132 determine the extent of the duty and the resulting degree of care necessary to fulfill that duty. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Crane v. Exxon Corp., U.S.A., supra. In determining the duty owed to an employee of a contractor by an engineering firm also involved in the project, the court must consider the express provisions of the contract between the parties. Day v. National U.S. Radiator Corp., 128 So.2d 660, 241 La. 288 (La.1961).
In Day, the plaintiff, who was employed by a subcontractor, was fatally scalded when a boiler exploded following its installation. His wife sued, among others, the architecture firm responsible for preparing plans and specifications for the construction of the building in which the accident happened. The architects were obligated to adequately supervise the "execution of the work to reasonably insure strict conformity with the working drawings, specification and other contract documents." However the Court held that this provision did not give the architects authority to supervise the contractor's methods. Moreover, the Court found that, as a general rule, architects do not have power or control over the general contractor's methods unless provided for in the contract. The case sub judice involves contract documents similar to those in Day, although Day concerns the duty of architects, not engineers.
The contract between Owen & White and the City of Minden requires Owen & White to provide an engineer to act as resident project representative to "serve as ENGINEER's liaison with CONTRACTOR, working principally through CONTRACTOR's superintendent and assist him in understanding the intent of the Contract Documents." A further provision requires that the resident project representative "conduct on-site observations of the Work in progress to assure ENGINEER in determining if the Work is proceeding in accordance with the Contract Documents and that completed Work will conform to the Contract Documents." Additionally, the resident project representative is prohibited from "[undertaking] any of the responsibilities of CONTRACTOR, subcontractors, or CONTRACTOR's superintendent, or [expediting] the Work, and from [advising on or issuing] directions relative to any aspect of the means, methods, techniques, sequences or procedures of construction unless such is specifically called for in the Contract Documents." Finally, the resident project representative "shall not advise on or issue direction as to safety precautions and programs in connection with the Work."
Following Day's directive to scrutinize the contract documents, we find that the contract clearly defines and limits Hardin's duties. He had limited authority and was expressly prohibited from guiding Cajun or its employees in its methods. Therefore, Hardin did not breach any legal duty bestowed upon him via the contract.
Yocum also contends that the trial court erred in failing to find that Hardin breached a moral duty by not warning of the unreasonably dangerous condition posed by the almost parallel slope of the excavation ditch. Both Yocum's expert witness, Ronald E. Smith, and Owen & White's expert witness, A.J. Szabo, testified that Hardin would have had a moral duty to warn if he knew the condition to be unreasonably dangerous. Smith also testified that an engineer is morally bound to investigate any situation where an employee complains directly to him about an unsafe condition. Thus, to have breached such a duty, Hardin would have had to know that the ditch was dangerous. The trial court found that Hardin did not know this.
Where the trial court's findings of fact are reasonable when gleaned from a review of the entire record, the Court of Appeal may not disturb those findings in the absence of manifest error. Blair v. Tynes, 621 So.2d 591 (La.1993), amended on rehearing, 625 So.2d 1346 (La.1993); Williams v. Page, 519 So.2d 388 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1156 (La.1988).
The record reveals that Hardin was involved in two aspects of the project, thereby keeping away from the excavation site much of the time. However, Hardin was at the site approximately three days prior to the accident. While there, he actually climbed up the side of the ditch. At that time, its slope did not appear dangerously steep to *133 Hardin. Furthermore, Hardin testified that no one ever confronted him with complaints about the safety of the ditch. Yocum admitted that he never complained to Hardin that the ditch was not safe. Hardin specifically stated that he thought the ditch was safe the last time he saw it prior to Yocum's accident.
Based on this testimony and after a review of the entire record, we cannot say that the trial court erred in determining that Hardin was unaware of an unreasonably dangerous condition. Because Hardin did not know that the ditch was unsafe, he cannot be held to a moral duty to warn.
Finally, Yocum attacks the validity of the portion of the contract between Owen & White and the City of Minden pertaining to Owen & White's lack of responsibility for Cajun's work methods. Louisiana law prohibits any clause "that, in advance, excludes or limits the liability of one party for causing physical injury to the other party." LSA-C.C. Art. 2004. Yocum's argument lacks merit because there was no privity of contract between Owen & White and either Yocum or Cajun.

Indemnification
Owen & White filed a third party demand against Cajun and its insurer, Bituminous Insurance Company, seeking indemnification for all expenses incurred in the defense of this litigation, including payment of attorney's fees. Owen & White bases its entitlement to indemnification on the following provision of the contract between the City of Minden and Cajun:
To the fullest extent permitted by law, the contractor shall indemnify and hold harmless owner and engineer and their agents and employees from and against all claims, damages, losses and expenses, including, but not limited to, attorney fees arising out of or resulting from the performance of the work provided that such claim, damage, loss or expense (a) is attributable to the bodily injury, sickness, death or disease, or to injury or to destruction of tangible property (other than the work itself) including loss of the use resulting therefrom and (b) is caused in whole or part by any negligent act or omission of the contractor, any sub-contractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.
The trial court considered Cajun negligent almost to the point of acting intentionally tortious and therefore ordered that Owen & White be reimbursed for attorney's fees in the amount of $10,000, representing 100 hours of legal work billed at a rate of $100 per hour. Owen & White contends that this amount is insufficient because it does not fully indemnify Owen & White for expenses incurred.
While the evidence is somewhat conflicting on the issue of whether the ditch was severely sloped, we find that the trial court could have reasonably found that a preponderance of the evidence supports the finding that Cajun was negligent. Therefore, the trial court did not err in awarding attorney's fees.
The question becomes whether the amount awarded, $10,000, is sufficient to fully indemnify Owen & White. A trial court is afforded much discretion in assessing an award for attorney's fees. Haynes v. Shumake, 582 So.2d 959 (La.App. 2d Cir.1991). However, the plain language of the contract promised full indemnification to Owen & White. The $10,000 award did not include all costs associated with the defense of this case. Therefore, the award must be increased. The judgment is amended to indemnify Owen & White in the amount of $20,000 to cover attorney's fees and other expenses pertaining hereto.

Court Costs
The final issue is whether the court erred in assessing court costs entirely against Yocum. In the judgment of the court, costs were assessed against "Jimmy W. Yocum and ______." Owen & White complains that both Yocum and intervenor, Lumbermen's Mutual Casualty Company, should have been taxed with costs because both parties were cast in judgment. In support of its argument, Owen & White cites LSA-C.C.P. Art. 1920, which provides that *134 "unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause."
The trial court is vested with great discretion to assess costs as it sees fit. However, that authority is not absolute. Lynch v. Hanover Ins. Co., 611 So.2d 121 (La.App. 5 Cir.1992), rehearing granted, on rehearing, writ denied, 613 So.2d 996 (La.1993). We have reviewed the record and find no equitable basis which supports the trial court's assessment of costs. Accordingly, the judgment is amended to assess court costs equally between Yocum and Lumbermen's Mutual Casualty Company.
AMENDED AND AFFIRMED