791 So.2d 793 (2001)
Sharlena BLACK, Individually, and as Administratrix of the Estate of Ronnie Black, and Natural Tutrix of the Minors, Rollin James Black and Alexander Alvin Black
v.
GORMAN-RUPP, Mayer-Hammant Equipment, Inc., Sewerage and Water Board of New Orleans, Pepper & Associates, Inc. and ABC Insurance Company.
No. 2000-CA-1223.
Court of Appeal of Louisiana, Fourth Circuit.
July 11, 2001.
J. Nelson Mayer, III, Edmond J. Harris, Valteau, Harris, Koenig & Mayer, New Orleans, for Plaintiff/Appellant.
W. Lee Kohler, Terrence L. Brennan, Deutsch, Kerrigan & Stiles, L.L.P., New Orleans, for Defendants/Appellees.
Court composed of Judge JAMES F. McKAY III, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr.
McKAY, Judge.
Sharlena Black appeals from the judgment of the trial court granting Pepper & Associates, Inc.'s motion for summary judgment and dismissing with prejudice of the plaintiff's claims against Pepper & Associates, Inc. and CNA Insurance Company.
The matter before this Court arises from a construction project at the Broad Street Manifold Canal.[1] The Sewerage and Water Board is the owner of the site. Gorman-Rupp is the manufacturer of the pump in question. Mayer-Hammant Equipment, Inc. leased the pump to T.L. James Construction Co. (T.L. James), the general contractor of the project. T.L. James employed Ronnie Black as a construction worker. Pepper & Associates, Inc. (Pepper) contracted with the Sewerage and Water Board, as consulting engineers, for the project on October 22, 1986. On December 3, 1991, a malfunction occurred causing water in the excavation site to rise. To avoid the pump being submerged, it was lifted and suspended from a cherry picker. The next morning, after the water had sufficiently subsided, the pump was lowered into the excavation site. *794 Mr. Black was told to remain with the pump to monitor its operation. Later that morning, T.L. James' foreman discovered that the pump had fallen off of the ranger and into the excavation area. Ronnie Black's body was discovered under the pump. The plaintiff filed suit against the Sewerage and Water Board, Pepper, Gorman-Rupp, Mayer-Hammant Equipment, Inc., and T.L. James and their liability insurer, CNA Insurance Co. (CNA), for Ronnie Black's death.
The Sewerage and Water Board was dismissed from this case on summary judgment based on a workers' compensation statutory employee issue. Gorman-Rupp and Mayer-Hammant Equipment, Inc., were also dismissed on summary judgment. Pepper filed three motions for summary judgment. The trial court denied the first two, but the third motion was granted which dismissed Pepper and its liability insurer, CNA.
Pepper's first motion for summary judgment, filed in March of 1994, was based on the premise that Pepper had no responsibility for site safety and that they owed no duty to Mr. Black. The trial court denied this motion on the grounds that it remained undetermined when Pepper became aware of a dangerous situation and failed to warn anyone. The trial court also denied Pepper's second motion for summary judgment, which was filed in July of 1996. Here, Pepper re-urged that it had no duty and no knowledge of the alleged dangerous condition, i.e., the manner in which the pump was placed. The trial court denied this motion finding that a material factual dispute was created by plaintiffs submission of the affidavit of Otis Black, which was later discovered to be falsified. Otis Black later admitted that he was not at the construction site on Washington Avenue and Broad Street on the day his brother was killed, but was at another construction site.
The case lay dormant from 1997 through 1998 due to Pepper's Chapter 13 Reorganization in bankruptcy court. The plaintiff then added Pepper's liability insurer, CNA, as a direct defendant. In June of 1999, Pepper and CNA again reurged the motion for summary judgment, which the trial court granted dismissing Pepper and CNA from the lawsuit with prejudice. The trial court found that Pepper had no duty to warn the decedent because there was no evidence to establish that Pepper knew of the dangerous situation. It is from this judgment that the plaintiff now appeals.
The appellant in its sole assignment of error argues that the trial court erred in granting a summary judgment in favor of Pepper.
The appellate court standard of review of summary judgments is de novo. Smith v. Our Lady of the Lake Hospital, 639 So.2d 730 (La.1994); Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580.
The appellant argues that Pepper contracted with the Sewerage and Water Board to prepare the plans and specifications for the project and to provide on site supervision to assure that the contractor, T.L. James, followed the plans and specifications. Appellant contends that the plans and specifications give ultimate authority to Pepper to delay, interrupt or even suspend the contractor's work for failure to carry out the provisions of the contract and failure to correct conditions unsafe for the workmen and the general public.
The main issue that derives from appellant's allegations is whether Pepper owed a duty to Ronnie Black, an employee of T.L. James. The allegations include that Pepper was negligent as it failed to properly *795 supervise the work, failed to design a system to safely remove water from the job site, and failed to provide a safe place to work.
Contrarily, Pepper argues that the trial court correctly dismissed them on the motion for summary judgment. They assert that their contract with Sewerage and Water Board was for engineering services to check that the construction work was in compliance with the contractual requirements and that they had no responsibility for the site safety or a duty to Ronnie Black, a T.L. James employee. They further assert that they had no knowledge of the alleged dangerous condition, i.e., the manner in which the pump was placed, which resulted in the death of Ronnie Black. In their argument they claim that the appellant failed to identify any evidence to support its claim that Pepper was negligent or that Pepper's actions or inaction were a cause of Ronnie Black's death. They further argue that no evidence was presented to the trial court proving that Pepper was aware of the alleged dangerous placement of the pump, that Pepper should have warned Ronnie Black of this condition, or that Pepper had a duty to supervise the safety of the site.
Appellee's versions of the facts are as follows. On the morning of the accident, December 4, 1991, the water in the excavation site was high due to overnight rain. T.L. James' crane operator, Randolph Whittington, arrived at the site at 6:00 a.m., and was requested to assist the pumping crew in setting the pump while it was still dark, which required the workers to use flashlights. Randolph Whittington told T.L. James supervisor, Thomas Breland, that the pump looked unsteady. Thomas Breland told Randolph Whittington that he would take care of the pump. Ernie Murry, Pepper's site representative for the project, arrived at the work site at 6:30 a.m. and noticed that there was no work being performed at Washington Avenue and Broad Street. He proceeded to other areas of the site where work was underway. Later that morning, around 9:30 a.m., while making his rounds to check the pumps, the T.L. James' pump foreman discovered that the pump had fallen to the floor of the excavation. He went into the excavation area and found Ronnie Black's body beneath the pump. He immediately called Randolph Whittington to remove the pump. Randolph Whittington noted that the pump appeared not to have been properly secured. A T.L. James employee informed Ernie Murry, that Ronnie Black was dead. There were no eyewitnesses to the accident. Ernie Murry asserts that his role was to observe and record the contractor's progress, to insure that the work conformed to the plans and specifications, and to facilitate the progression of the contractors' pay request.
The only way a legal duty to act can arise from the facts before this Court, is if the contract between the Sewerage and Water Board and T.L. James and the Sewerage and Water Board and Pepper lead to the conclusion that Pepper was responsible for performing those activities that appellant alleges that Pepper failed to perform. After a careful review of the contracts we are of the same opinion as the trial court that Pepper did not have a contractual obligation to supervise construction or site safety. The mere fact that Pepper was involved in the construction process and had contractual duties to the Sewerage and Water Board does not create an all encompassing duty to protect everyone from every risk which could be encountered during the course of the project. To defeat the summary judgment the plaintiff cannot merely allege that Pepper owed a duty to Ronnie Black, but must demonstrate some basis in law for the imposition of this duty. In the absence of *796 such a duty there can be no liability on the part of Pepper.
In Yocum v. City of Minden, 26,424 (La.App. 2 Cir. 1/25/95), 649 So.2d 129, the court held that, "in determining the duty owed to an employee of a contractor by an engineering firm also involved in the project, the court must consider the express provisions of the contract between the parties." 649 So.2d at 132. Yocum was injured while working in an excavation when two clods of dirt fell on him. He contended that the engineer, Owen & White, had a duty to warn him of the danger presented by the allegedly unsafe slope of the ditch in which he was working. Owen & White's contract required it to inspect the work to insure that the construction conformed to the plans and specifications. The contract precluded Owen & White from advising or instructing the contractor with regard to the construction means, methods or techniques and site safety. The trial court found that the engineer, Owen & White, was not responsible for site safety and therefore, had no duty to protect Yocum from the alleged dangerous condition.
The scenario in Yocum is similar to that in the instant matter. The construction contract placed the responsibility for site safety on T.L. James, not on Pepper. Clearly, absent an express contractual obligation, a design professional such as Pepper has no authority or responsibility to supervise a contractor's methods of performance or to supervise site safety. Pepper cannot be held liable for failing to perform activities, which it had no responsibility or authority to undertake. Pepper's contract clearly does not make it responsible for site safety or for supervision of the contractor's methods of performance or for actual performance of any of the work. Pepper had no contractual obligation to (1) supervise operation of the pump or any of T.L. James methods of performance; (2) design, implement, or supervise a system to remove water form the construction site; or (3) supervise site safety or provide T.L. James' employees with a safe workplace. Therefore, we conclude that the trial court was correct in finding that Pepper did not owe a duty to Ronnie Black and therein correctly granted Pepper's motion for summary judgment.
Accordingly, we find no error in the trial court's granting of the appellee's motion for summary judgment.
AFFIRMED.
NOTES
[1] This construction project involved excavations and rehabilitation of an existing subsurface drainage canal and the construction of a new underground drainage canal adjacent to the existing canal.