WHIPPLE, C.J.
*3 Plaintiff, The Lathan Company, Inc., appeals a judgment of the trial court granting summary judgment in favor of Jacobs Project Management Co./CSRS Consortium and dismissing with prejudice plaintiff's claims against this defendant. For the following reasons, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
On August 13, 2010, The Lathan Company, Inc., entered into a public works contract with the State of Louisiana, Department of Education, Recovery School District ("the RSD") to renovate William Frantz School in New Orleans. Billes Partners, LLC ("Billes") served as architect on the project. Jacobs Project Management Company/CSRS Consortium ("Jacobs"), through a contract with the RSD, served as the construction manager on the project.
On May 14, 2012, Lathan filed a "Petition for Mandamus," naming the RSD and John White, in his official capacity as the Louisiana Superintendent of Education, as defendants, seeking an order requiring the RSD to make payment of all undisputed amounts owed for Lathan's work. In an amended petition filed on August 1, 2014, Lathan added Billes and Jacobs as defendants.
Lathan's lengthy amended petition, consisting of twenty-five pages and two hundred eighteen paragraphs, alleged, in pertinent part, that Jacobs owed a duty to Lathan to conduct constructability reviews and to oversee and administer the project according to the standard of care of similar professionals in the industry, which Jacobs did not do. In pertinent part, the amended petition alleged:
(1.) The original bid documents and design drawings contained flaws, including the failure to disclose certain mold conditions and an underground fuel tank, which resulted in Lathan performing additional work, and for which Lathan's contract was not adequately extended for the time required to address these undisclosed conditions;
(2.) As a result of the faulty design documents, Lathan submitted in excess of 400 requests for information ("RFIs") to Billes and despite numerous promises to timely respond by Billes and Jacobs, Lathan's RFIs were not timely responded to, resulting in project delays;
(3.) Billes and Jacobs did not perform inspections in the manner prescribed by industry standards; and
(4.) Billes and Jacobs failed to review, certify and/or approve the amounts due to Lathan, causing Lathan to incur additional costs, delaying the project, and preventing Lathan from having access to contract funds to pay subcontractors and suppliers.
Lathan summarized Jacobs's wrongful acts as: (1.) its unreasonable refusal to approve Lathan's payment applications and schedules; (2.) its extremely delayed responses to Lathan's questions and submittals; (3.) its refusal to give needed responses to reasonable questions; (4.) its refusal to properly recommend substantial completion; (5.) its refusal to properly manage the oversight of the project; and *4 (6.) its overall interference with the progress and completion of the project. Accordingly, Lathan alleged that it was entitled to damages under general tort law for Jacobs's negligent professional undertaking and under the Louisiana Unfair Trade Practices Act ("LUTPA").
In response, Jacobs filed a motion for summary judgment, seeking a dismissal of Lathan's claims against it. In its memorandum in support of its motion, Jacobs asserted that Lathan's general negligence claims must fail because Jacobs owed no duty to Lathan, since Lathan was not a party to the contract between Jacobs and the RSD. Jacobs additionally urged that because it owed no duty to Lathan, Lathan's LUTPA claims must fail as a matter of law. Notwithstanding whether a duty was owed, Jacobs also argued that Lathan's allegations did not rise to the level of an unfair trade practice that is actionable under LUTPA. Alternatively, Jacobs argued that a majority of Lathan's claims against it were prescribed.
Lathan opposed the motion, contending that Jacobs owed it a duty given the high degree of control and power that Jacobs, as a learned professional, held and had exercised (or failed to exercise) over Lathan. Additionally, Lathan argued that its claims against Jacobs were timely because: (1) Billes and Jacobs are joint tortfeasors and thus, the 2012 suit against Billes interrupted prescription as to Jacobs; and (2) Jacobs was still performing work on the project and thus, Lathan's claims against Jacobs are governed by the continuing tort doctrine.
Following argument, the trial court granted Jacobs's motion for summary judgment, finding that Jacobs owed Lathan no duty. As such, the trial court concluded that in the absence of a duty, Lathan could not recover under its negligence theory or LUTPA claims.[1]
On September 24, 2015, the trial court signed a judgment granting Jacobs's motion for summary judgment and dismissing Lathan's claims against Jacobs with prejudice. However, the written judgment was silent as to the prescription argument that was raised by Jacobs in support of the motion of summary judgment, and which the trial court stated, in its oral reasons for judgment, that it would deny. Lathan subsequently filed a motion for new trial, which was denied by the trial court.
Lathan then filed the instant appeal, assigning the following as error:
(1) The trial court improperly granted Jacobs's motion because Jacobs, being and acting as a licensed construction professional, and under the facts of this case, owed a duty to Lathan.
(2) The trial court improperly granted Jacobs's motion by making a credibility determination as to the record evidence.
(3) The trial court improperly granted Jacobs's motion by making an improper factual determination of disputed evidence on summary judgment concerning Jacobs's scope of duties properly reserved for the trier of fact-here, a jury.
(4) The trial court erred in failing to deny Jacobs's motion as premature considering the woefully inadequate state of discovery.
(5) The trial court erred in denying Lathan's motion because the underlying summary judgment ruling was *5 contrary to binding First Circuit authority.
(6) The trial court erred in denying Lathan's motion by finding that newly-discovered evidence on the issue of Jacobs's professional duties did not present an issue of fact warranting a new trial.
DISCUSSION[2]
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 750. A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B(2).[3] The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. See LSA-C.C.P. art. 966 A(2).
The burden of proof is on the mover. See LSA-C.C.P. art. 966 C(2). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. LSA-C.CP. art. 966 C(2); Temple v. Morgan, 15-1159 (La. App. 1st Cir. 6/3/16), 196 So.3d 71, 76. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Lemann v. Essen Lane Daiquiris, Inc., 05-1095 (La. 3/10/06), 923 So.2d 627, 632.
With regard to the negligence claim, Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under general negligence principles. Daniels v. USAgencies Cas. Ins. Co., 11-1357 (La. App. 1st Cir. 5/3/12), 92 So.3d 1049, 1055. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1.) the defendant had a duty to conform her conduct to a specific standard of care (the duty element); (2.) the defendant failed to conform her conduct to the appropriate standard of care (the breach of duty element);
*6 (3.) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4.) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5.) the actual damages (the damage element). Daniels, 92 So.3d at 1055.
Duty is a question of law and is a threshold issue in any negligence action. Simply put, the inquiry is whether a plaintiff has any law-statutory, jurisprudential, or arising from general principles of fault-to support the claim. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. When no factual dispute exists and no credibility determinations are required, the legal question of the existence of a duty is appropriately addressed by summary judgment. Daniels, 92 So.3d at 1055.
Louisiana jurisprudence imposes a duty on professionals to perform in accordance with the generally accepted standards of their respective industry. See Calandro Development, Inc. v. R.M. Butler Contractors, Inc., 249 So.2d 254, 265 (La. App. 1 Cir. 1971). In Calandro, this court held that an engineer, who designed and supervised construction of a subdivision, provided surveying services, and prepared plans and contract documents, owed a duty to the general contractor's surety to adequately supervise work to ensure completion in accord with the contract plans and specifications. Calandro, 249 So.2d at 260-61. In reaching this conclusion, this court specifically noted that a "third party who is not in privity may, nevertheless, have an action in tort against an architect or engineer," because "[a]n engineer or architect must be deemed and held to know that his services are for the protection, not only of the interests of the owner " but also to third parties who must "rely on the architect or engineer to produce a completed project conformable with the contract plans and specifications." Calandro, 249 So.2d at 264-65 (Emphasis added.).
Similarly, in Colbert v. B.F. Carvin Construction Co., 600 So.2d 719, 723 (La. App. 5th Cir.), writs denied, 604 So.2d 1309, 1311 (La. 1992), after surveying numerous cases from Louisiana and other jurisdictions, the appellate court held that a contractor had stated a cause of action for negligent professional undertaking against an architect by alleging that the architect: failed to prepare adequate plans and specifications; failed to promptly provide additional instructions and clarifications during the project; provided economic pressure on the owner to withhold payments due to compel the contractor to perform extra work not included in the plan and refused to provide change orders and compensation therefor ; and refused to timely inspect the areas of work that have been completed. Colbert, 600 So.2d at 720-21, 725. In so holding, the Fifth Circuit adopted a balancing test that was to be applied on a case-by-case basis in determining whether a cause of action exists:
"The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm." [Emphasis added.]
Colbert, 600 So.2d at 725.
In Harris Builders, L.L.C. v. URS Corp., 861 F.Supp.2d 746 (E.D. La. 2012), *7 the federal district court likewise concluded that a cause of action for "negligent professional undertaking" may exist in favor of a general contractor, Harris, against a company, URS, alleged to be an "engineer, consultant, construction manager, and Owner representative," with whom Harris had no privity of contract. Harris Builders, 861 F.Supp.2d at 753. The federal court noted that while Louisiana courts had generally applied the theory to architects, such reasoning could apply to URS. In utilizing the balancing test enunciated in Colbert, the court noted:
URS's construction plan preparations and instructions to Harris [general contractor] to redo certain work were acts that URS had to have known would directly affect Harris. It was foreseeable and fairly certain that Harris would suffer economic harm if URS managed the project poorly, and URS's development of project specifications directly affected the work Harris performed. In short, Harris asserts a high degree of economic control by URS that was the purpose recognized in Colbert as supporting a cause of action.
[Emphasis added.]
Harris Builders, 861 F.Supp.2d at 753.
Herein, Lathan asserts that while the defendants in Calandro, Colbert, and Harris Builders were classified as architects or engineers, the rationale and legal principles set forth therein support the proposition that a duty to third parties, even absent direct contractual privity, should not be confined to only those construction professionals holding the title of ''architect" or "engineer." Rather, Lathan avers that the focus is necessarily on the management responsibilities and supervisory authority that the particular construction professional holds or practices on the project that may warrant extending the duty owed by that construction professional to a third party not in privity. Accordingly, Lathan contends that given the scope of Jacobs's extensive management responsibilities and supervisory authority over the disputed construction project herein, Jacobs owed Lathan a duty to exercise this authority to a professional standard, which it allegedly failed to do; or, at the very least, that there are issues of fact that must be resolved by a trier of fact before a determination can be made as to whether or not Jacobs owed and breached a duty to Lathan.
Jacobs counters that the uncontested facts show that Jacobs did not serve as an architect, engineer, or design professional on the project, did not control Lathan, and did not owe Lathan a duty. Jacobs maintains that Lathan's claims must fail because they are predicated on an erroneous assertion that Jacobs independently owed Lathan a duty to approve Lathan's pay applications and schedules, respond to submittals, recommend substantial completion, and manage the project. Jacobs asserts that it owed no such duty to Lathan, contractually or otherwise, and therefore, the trial court did not err in granting summary judgment and dismissing Lathan's claims against Jacobs.
In support of its motion for a summary judgment on the basis that it owed no duty, Jacobs submitted the affidavit of Nicholas Amort, a project manager for Jacobs who was involved in the management of the project at the William Frantz School, Mr. Amort attested that Jacobs did not draft specifications or prepare design documents for the project, but merely provided recommendations to the RSD based on its knowledge of how construction projects are supposed to proceed. Mr. Amort further attested that Jacobs did not sign any change order or any of the twenty-two *8 construction change directives ("CCDs")[4] issued on the project. Mr. Amort also attested and acknowledged that Jacobs was not expected to respond to any request for information ("RFIs"), as they were created by Lathan and responded to by Billes. Mr. Amort further attested that any work-change proposal requests were issued by Billes to Lathan, that Jacobs did not sign these forms, and that Jacobs was neither obligated nor expected to respond.
In opposition to the motion for summary judgment, Lathan submitted the contract between Jacobs and the School District. The contract provides that Jacobs's project management team shall include a Louisiana licensed architect or engineer, and a Louisiana licensed contractor or a certified project management professional . Moreover, the contract outlines more than eighty tasks that Jacobs Project Management Company was responsible for in connection with the project, including:
2.1 [Jacobs] will serve as an agent and representative of the Owner (RSD).
2.7 [Jacobs] shall be responsible for assisting the RSD in the procurement of, and providing design management of, professional design consultants[.]
2.9 [Jacobs] will be responsible for providing field inspection services as necessary to ensure compliance to schedule, budget, and quality contractual requirements.
3.3.2.9 [Jacobs shall] [v]alidate the professional design consultant's cost estimate and provide value engineering and constructability reviews for the Schematic Design, Design Development, and Construction Documents phases of the projects to ensure compliance with project budget and schedule.
3.3.2.10 [Jacobs shall] [p]rovide document quality assurance/quality control reviews for the Schematic Design, Design Development, and Construction Documents phases of the projects.
3.4.2.6 [Jacobs shall] [p]rovide project construction management services to include: conduct regular jobsite meetings, oversee quality assurance testing and inspection programs, monitor contractor and subcontractor work for deficiencies... expedite communication, processing and documentation of all contractor's submittals including RFI's, payments requests and change orders.
3.4.2.8 [Jacobs shall] [p]rocess and track payment requests for approval within a week of receipt.
3.5.2.2 [Jacobs shall] [p]rocess contractor's payments and verify accuracy of paid quantities.
3.5.3.1 [Jacobs shall] [r]eview contractor's punch lists and attend the professional design consultant's substantial completion inspections. Recommend to the RSD acceptance or rejection of professional design consultant's issuance of the certificate of substantial completion and conduct final acceptance inspections with the RSD.
3.5.3.5 [Jacobs shall] [m]onitor and document and report all Time and Materials change orders.
Accordingly, while Mr. Amort's affidavit may have demonstrated that Jacobs did not draft specifications or prepare design documents for the project, the evidence submitted by Lathan establishes that Jacobs was to provide: (1.) design management services, and (2.) document quality assurance/quality control reviews for schematic design, design development, and *9 construction document phases of the project. Thus, if the architect or engineer on Jacobs's staff, as required by the contract, failed to render such "management services" during the design phase of the project, or was negligent in rendering such services, it is reasonably foreseeable that faulty design documents could result, including design documents that failed to disclose mold conditions and resulting damages due to an undisclosed underground tank, as Lathan alleges occurred herein. Moreover, it is "foreseeable and to a degree certain" that such faulty design documents could delay the entire project and cause economic harm to the general contractor, as Lathan alleges herein. See Harris, 861 F.Supp.2d at 753.
Moreover, while Mr. Amort's affidavit may establish that Jacobs did not sign any change orders or CCD's and that Jacobs was not expected to respond to the RFIs, the evidence submitted by Lathan establishes that Jacobs was responsible for coordinating the management of invoices, contracts, and change orders. And, the evidence submitted by Lathan establishes that Jacobs's duties included the processing and documentation of all contractors' submittals including RFIs, payment requests, and change orders. Thus, if Jacobs improperly delayed the processing of invoices and RFIs, as alleged herein, it is foreseeable and to a degree certain that the project would be delayed, and thereby, adversely affect the work and profits of the general contractor, as Lathan alleges occurred herein.
Additionally, while Jacobs may have established that the certificate of completion can only be signed by the owner and architect, the evidence submitted by Lathan provides that Jacobs was obligated to attend the substantial completion inspection and that Jacobs was responsible for recommending "acceptance" to the owner. Should Jacobs delay the inspections or "negligently" refuse to recommend substantial completion, as Lathan alleges occurred herein, it is foreseeable that its actions could cause economic harm to Lathan, acting as the general contractor on the project.
Accordingly, after careful review of the record herein, we find that although Jacobs was not in direct contractual privity with Lathan, Jacobs must be deemed and held to know that its services were not only for the protection or interests of the owner but also third parties, including, specifically, Lathan, who was acting as the general contractor on the project. As outlined above, it was foreseeable and to a degree certain that Lathan would suffer economic harm if Jacobs failed to perform, or negligently performed, many of its professional duties. See Harris, 861 F.Supp.2d at 753 ; Colbert, 600 So.2d at 725. Moreover, as outlined above, there is a close connection between Jacobs's alleged failure to act according to industry standards, and the alleged economic harm suffered by Lathan. Colbert, 600 So.2d at 725.
Thus, after carefully considering the record herein, and applying the balancing test enunciated in the jurisprudence noted above, we are unable to find any reason why the courts' rationale in such prior jurisprudence, extending the liability of architects and engineers, should not likewise apply to a project management professional, under the facts of this case. While the balancing test adopted by the Fifth Circuit in Colbert and the Middle District in Harris Builders is not binding, it is persuasive herein, and under this test, we agree with Lathan that a duty would be owed by Jacobs to plaintiff.
While Section 3.3.4 of Jacobs's contract provides that Jacobs is not responsible for any design acts or omissions of the design consultant on the project, and Section 3.6 *10 provides that Jacobs shall not be responsible for any construction defects, the direct acts of negligence by Jacobs as alleged in Lathan's lengthy detailed petition are distinguishable from any alleged claims arising out of design acts or omissions of the design consultant or alleged construction defects. Lathan specifically alleges that, despite its obligation and duty to do so, Jacobs failed to oversee and administer the project according to industry standards of similarly situated project management professionals. Lathan's petition alleges, in detail, specific instances where Jacobs failed to perform, or negligently performed, its construction management responsibilities. Furthermore, the petition outlines how Jacobs's alleged professional negligence impeded Lathan's performance on the project, added extra costs, and substantially delayed the project's completion, causing economic harm to Lathan. Cf. Kappa Development & General Contracting, Inc. v. City of Biloxi et al., Cause No. A2404-14-cv-00176 (Harrison County Circuit Court, Second Judicial District, State of Mississippi) (unpublished).[5]
Thus, we conclude that the trial court erred as a matter of law in granting summary judgment and dismissing Lathan's claims against Jacobs based on its erroneous finding that there was (or could be) no duty owed by the project manager to the general contractor. Accordingly, finding merit to Lathan's arguments herein, we conclude that the matter should be remanded to the trial court for further proceedings.[6]
CONCLUSION
For the foregoing reasons, we reverse the trial court's September 24, 2015, summary judgment in favor of Jacobs/CSRS Consortium and its dismissal with prejudice of Lathan's claims against this defendant. The case is remanded to the trial court for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed to defendant, Jacobs Project Management Co./CSRS Consortium.
REVERSED AND REMANDED.
Chutz, J. Dissents for Reasons assigned by McClendon, J.
Guidry, J. Concurs.
McClendon, J. dissents for reasons assigned.

Notably, the trial court also commented that, although not necessary to address, it would not have granted Jacobs's motion for summary judgment, as requested, on the issue of prescription.

We pretermit further discussion of the prescription argument that was raised as an alternative argument in the subject motion for summary judgment, as neither party has briefed this argument for purposes of the instant appeal. See LSA-C.C.P. art. 2133(B) ; Uniform Rules-Courts of Appeal, Rule 1-3.

Louisiana Code of Civil Procedure article 966 was amended and reenacted by Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The amended version of Article 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act; therefore, we refer to the former version of the article in this case. See Acts 2015, No. 422, §§ 2 and 3.

CCDs are signed by the owner and architect only, and the contractor must proceed with the changes despite not signing off on the same. Whereas, change orders are signed by the architect, contractor, and owner.

In Kappa, HNTB was hired as a "program manager" by the city to oversee a construction project. Under the facts therein, the court found that HNTB did not owe a legal duty to the general contractor, Kappa Development, noting in the opinion that:
Kappa explained in its summary judgment filings, and at oral argument, that its claim against HNTB is for HNTB's alleged failure to timely recommend that the City accept and pay a certain change order. Kappa does not allege that HNTB negligently supervised the manner in which Kappa performed its work or that HNTB negligently performed any other alleged construction management responsibilities.

The trial court's dismissal of plaintiff's LUTPA claims was based on its finding that Jacobs did not owe a duty to Lathan. Insofar as we have reversed this finding of the trial court, we further remand this matter to the trial court for a determination by the trier of fact as to whether plaintiff's LUTPA claims should be dismissed pursuant to Jacobs's alternative argument that Lathan's allegations do not rise to the level of an unfair trade practice that is actionable under LUTPA.