# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #014

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **22nd day of March, 2024** are as follows:

**BY Griffin, J.:**

2023-C-00928    GUSTAVO BONILLA VS. VERGES ROME ARCHITECTS - A PROFESSIONAL ARCHITECTURAL CORPORATION, PIVOTAL ENGINEERING LLC, STEVEN HANNAH ROME AND JAMES E. AMEDEO (Parish of Orleans Civil)

Retired Judge Eric Harrington appointed Justice ad hoc, sitting for Hughes, J., recused in case number 2023-C-00928 only.

COURT OF APPEAL REVERSED; TRIAL COURT JUDGMENT REINSTATED. SEE OPINION.

# SUPREME COURT OF LOUISIANA

## No. 2023-C-00928

## GUSTAVO BONILLA

## VS.

## VERGES ROME ARCHITECTS - A PROFESSIONAL ARCHITECTURAL CORPORATION, PIVOTAL ENGINEERING LLC, STEVEN HANNAH ROME AND JAMES E. AMEDEO

*On Writ of Certiorari to the Court of Appeal, Fourth Circuit,*
*Parish of Orleans Civil*

**GRIFFIN, J.**[*]

We granted this writ to determine whether a construction contract, by its own terms, imposes a duty on an architect and contract administrator to safeguard against injury to an employee of a subcontractor. Adhering to the provisions of our Civil Code for the interpretation of contracts, we find no such duty exists.

## FACTS AND PROCEDURAL HISTORY:

The City of New Orleans ("City") entered into a construction contract with general contractor Tuna Construction, LLC ("Tuna") to renovate the Allie Mae Williams Multiservice Center. Tuna's contract contained attachments referred to as the Contract Documents, including the City's General Conditions of the construction contract ("General Conditions"). Tuna subcontracted with Meza Services, Inc. ("Meza") for demolition services. The City also executed a Professional Service Agreement ("Design Agreement") with Verges Rome Architects ("VRA") with VRA as the "Consultant" for "professional design and contract administration services." VRA retained Morphy Makofsky, Inc. ("MMI") as its engineering consultant.

---

[*] Retired Judge Eric R. Harrington, appointed Justice ad hoc, sitting for Justice Jefferson Hughes.

Meza's employee, Gustavo Bonilla, was performing demolition on a vault – a ten-foot by ten-foot cinderblock concrete room with a nine-foot-high concrete slab ceiling – located on the second floor of the building. Mr. Bonilla's supervisor had advised him, after taking down most of one sidewall and a small section of the front wall, to stand on the vault's ceiling with a hydraulic jackhammer and continue the demolition work. Shortly after beginning that task, the entire vault structure collapsed, causing Mr. Bonilla to sustain neck and back injuries.

Mr. Bonilla filed suit against VRA and MMI alleging negligence in the preparation and approval of the design plans and specifications, the failure to design and/or require support for the area being demolished, and the failure to monitor and supervise the execution of the plans to ensure safety at the job site. VRA subsequently moved for summary judgment asserting that, under the relevant contractual provisions, it did not owe a duty to oversee, supervise, or maintain the construction site or Mr. Bonilla's safety. In opposition, Mr. Bonilla cited genuine issues of material fact exist as to whether VRA owed him a duty to provide a safe work environment. The trial court granted summary judgment in favor of VRA. Inferring a duty from contractual provisions relating to required site visits and reporting deviations from the contract, the court of appeal reversed. *Bonilla v. Verges Rome Architects*, 22-0625, pp. 15-17 (La.App 4 Cir. 5/11/23), --- So.3d ---, 2023 WL 3371559 at *8-9. It found genuine issues of material fact as to VRA's awareness the vault was being demolished in an unsafe manner and that deviations from the relevant contractual provisions/specifications had occurred. *Id*.

VRA's writ application to this Court followed, which we granted. *Bonilla v. Verges Rome Architects*, 23-0928 (La. 11/8/23), 372 So.3d 818.

## DISCUSSION

The issue before this Court is whether VRA is entitled to summary judgment based on the language of the General Conditions and the Design Agreement. "The

2

determination of whether a contract is clear or unambiguous is a question of law." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 9 (La. 5/22/07), 956 So.2d 583, 590. "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate." *Id.*, 07-0054, p. 10, 956 So.2d at 590. Similarly, the grant or denial of a motion for summary judgment is reviewed *de novo* using the same criteria as trial courts. *Bernard v. Ellis*, 11-2377, p. 10 (La. 7/2/12), 111 So.3d 995, 1002.

The duty owed to an employee of a contractor by an engineer or architect is determined by the express provisions of the contract between the parties. *See Yocum v. City of Minden*, 26,424, pp. 3-4 (La.App. 2 Cir. 1/25/95), 649 So.2d 129, 131 (citing *Day v. National U.S. Radiator Corp.*, 128 So.2d 660, 241 La. 288 (1961)). Contracts have the effect of law for the parties, and the interpretation of a contract is the determination of the common intent of the parties. *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 12-2055, p. 5 (La. 3/19/13), 112 So. 3d 187, 192; La. C.C. arts. 1983 and 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. "Common intent is determined, therefore, by the general, ordinary, plain, and popular meaning of the words used in the contract." *Clovelly*, 12-2055, p. 5, 112 So. 3d at 192. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. art 2050. "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract." La. C.C. art. 2053. "[W]hen a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a

3

supposed reasonable intention of the parties." *Prejean v. Guillory,* 10-0740, p.7 (La. 7/2/10), 38 So.3d 274, 279. Courts lack the authority to alter the terms of a contract under the guise of interpretation and should not create an ambiguity where none exists. *Sims*, 07-0054, pp. 8-9, 956 So.2d 583 at 589.

The General Conditions provide in pertinent part:

2.3 [Architect] and the Owner will provide general administration of the construction contract with [Architect] providing the administration of the Contract as related to the actual construction process and technical questions arising out of said construction. The undertaking of periodic visits and observations by [Architect] or his associates shall not be construed as supervision of actual construction.

2.4 [Architect] will visit the site periodically to familiarize himself with the progress and quality of the work. On the basis of his observations, he will keep the Owner informed of the progress of the work and shall submit weekly reports with photographs. [Architect] shall endeavor to protect the Owner against defects in the work.

2.5 [Architect] will not be responsible for nor control the construction means, methods, safety precautions and programs. [Architect] will not be responsible for the Contractor to carry out the work in accordance with the Contract Documents, or the Contractor's acts or omissions or the acts or omissions of his Subcontractors or employees.

\* \* \*

4.39 The Contractor shall be entirely responsible for the work under his contract until acceptance as Substantially Complete. Until completion and acceptance of the work, he shall be responsible for the repair of damage or replacement of all or any portions of the work that are rendered unacceptable.

\* \* \*

4.7 The Contractor shall direct the work using his full attention and shall be entirely responsible for all construction means and methods.

\* \* \*

4.9 Unless otherwise provided in the Contract Documents, the Contractor shall provide and include in the scope of his work all labor, materials, equipment, tools, machinery, utilities, transportation and other facilities and services necessary for the proper execution and completion of the work.

\* \* \*

4

10.1 The Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs. He shall take all reasonable precautions for the safety and shall take all reasonable steps to prevent damage, injury, or loss of the work itself and all material and equipment incorporated; or property at the site or adjacent thereto, and all employees or other persons affected by the work.

\* \* \*

10.3 The Contractor shall erect and maintain, as required by existing conditions and progress of the work, all reasonable safeguards for safety and protection....

\* \* \*

10.6 The Contractor shall be responsible for the adequate strength and safety of all scaffolding, staging and hoisting equipment and for temporary shoring, bracing, and tying.

\* \* \*

10.8 The Contractor shall designate a responsible member of its organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and the Consultant.

Further, the Design Agreement provides in pertinent part:

F(5) [Architect] will make site visits to the site as required (with a minimum of one per week) to review the progress and quality of the Work and to determine, in general, if the Work, when fully completed, will be in accordance with the Construction Documents and the Construction Progress Schedule. On the basis of its on-site observations, [Architect] will keep the Owner informed of the progress and quality of the work performed, and report known deviations from the Contract Documents, deviations from the most recently approved construction schedule, and shall endeavor to protect the Owner against defects and deficiencies observed in the Work.

\* \* \*

F(8) [Architect] shall not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences, or procedures, or for safety precautions and programs in connection with the Work, nor shall the [Architect] be responsible for the Contractor's failure to perform the Work in accordance with the Construction Documents. [Architect] shall not have control over or charge of, and shall not be responsible for, acts or omissions of the Contractor or of any other persons or entities performing portions of the Work.

Against this legal framework and contractual provisions, we turn to the issue at hand.

Mr. Bonilla argues that Section F(5) of the Design Agreement imposes a duty on VRA to supervise and report any deviations from design specifications to ensure work site safety. Alternatively, Mr. Bonilla avers there is an extra-contractual duty imposed on VRA, as an architect, to use reasonable care to protect against injury to third parties (like Mr. Bonilla) who may reasonably be foreseen to be at risk by deviation from or inadequate supervision of design specifications.

VRA counters that under the General Conditions and the Design Agreement, no duty is owed to Mr. Bonilla as relates to the means, methods, or safety of the demolition of the vault. Further, VRA contends that Section F(5) of the Design Agreement was not intended to make it responsible for the means and methods of construction and site safety; instead, VRA avers that Section F(5) ensures that, before final acceptance of the work, the owner will have the building it had contracted for. We agree.

The clear and unambiguous language of the General Conditions and Design Agreement dictate that VRA owes no duty to Mr. Bonilla.[1] "The mere fact that an engineer or architect was involved in the construction process and had contractual duties to [an owner] does not create an all-encompassing duty to protect everyone from every risk which could be encountered during the course of the project." *Black v. Gorman-Rupp*, 00-1223, p. 5 (La.App. 4 Cir. 7/11/01), 791 So.2d 793, 795.

_____

[1] We decline to establish an extra-contractual duty owed to Mr. Bonilla by VRA. *See Young v. Hard Rock Construction, L.L.C.*, 19-0484, pp. 13-14 (La.App. 5 Cir. 3/17/20), 292 So.3d 178, 188-89 ("*dicta* does not jurisprudentially create a duty to a contractor's employee from an engineer/architect for safety that operates independently of explicit contractual provisions"). Nor are we bound by the decisions of lower courts that have purportedly found a duty that extends to third parties not in privity of contract. Regardless, the cases relied upon by Mr. Bonilla are inapposite as they involve economic harm to contractors resulting from deficient performance of service and not injury to a subcontractor's employee for a lack of awareness and/or failure to report an unreasonably dangerous condition. *See Calandro Development, Inc. v. R.M. Butler Contractors, Inc.*, 249 So.2d 254, 264-65 (La.App. 1st Cir. 1971) (finding duty extends to third parties who "rely on [an] architect or engineer to *produce a completed project conformable with the contract plans and specifications*") (emphasis added); *Colbert v. B.F. Carvin Const. Co.*, 600 So.2d 719, 720-21, 725 (La.App. 5th Cir. 1992); *Lathan Company, Inc. v. State, Dept. of Education, Recovery School District*, 16-0913, p. 13 (La.App. 1 Cir. 12/6/17), 237 So.3d 1, 9 (finding it "foreseeable and to a degree certain that … faulty design documents could delay the entire project and cause economic harm to the general contractor").

Section F(5) of the Design Agreement requires VRA to make weekly site visits. The purpose of these visits is to ensure that the City secures the building it had contracted for and that the "progress and quality" of work is proceeding according to specifications. *See Day,* 128 So.2d at 666, 241 La. at 304-05 (observing "the primary object of this provision was to impose the duty on the architects to ensure to the owner that before final acceptance of the work, the building would be completed in accordance with the plans and specifications; and to ensure this result the architects were to make 'frequent visits to the work site' during the progress of work"); *Yocum,* 26,424, pp. 4-5, 649 So.2d at 132 (engineer's on-site inspections were for limited purpose of ensuring construction conformed to the plans and specifications). Section 2.3 of the General Conditions clarifies that the "undertaking of periodic visits and observations by [Architect] or his associates shall not be construed as supervision of actual construction."

Additional provisions support this interpretation by defining the roles of the parties involved. Section F(8) of the Design Agreement specifies that VRA "shall not have control over, charge of, or responsibility for the Construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the work." Similarly, Section 2.5 of the General Conditions states that VRA "will not be responsible for nor control the construction means, methods, safety precautions and programs." VRA is thus contractually limited in its authority and duties. *See Yocum,* 26,424, pp. 4-5, 649 So.2d at 132. Section 4.7 of the General Conditions bestows responsibility "for all construction means and methods" on the Contractor. Sections 10.1, 10.3, and 10.6 of the General Conditions clearly place responsibility for site safety on the Contractor. Specifically, Section 10.1 states that "Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs" such that "he takes reasonable precautions for the safety ... of all employees or other persons affected by the work."

7

Section 10.3 states that "Contractor shall erect and maintain … all reasonable safeguards for safety and protection." These safeguards include the Contractor's responsibility to provide "adequate strength and safety of all scaffolding, staging, and hoisting equipment and for temporary shoring" under Section 10.6. VRA cannot therefore be held liable for failing to perform duties it had no responsibility or authority to undertake. *See Black*, 00-1223, p. 6, 791 So.2d at 796.

## DECREE

For the foregoing reasons, the court of appeal is reversed, and the judgment of the trial court – granting summary judgment in favor of VRA – is reinstated.

**COURT OF APPEAL REVERSED; TRIAL COURT JUDGMENT REINSTATED**