STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0309

THE LATHAN COMPANY

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF EDUCATION,
RECOVERY SCHOOL DISTRICT AND JOHN WHITE IN HIS
OFFICIAL CAPACITY AS THE STATE OF LOUISIANA
SUPERINTENDENT OF EDUCATION

*Consolidated with*

NO. 2023 CA 0310

GUARANTEE COMPANY OF NORTH AMERICA

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF EDUCATION,
RECOVERY SCHOOL DISTRICT

Judgment Rendered: **FEB 2 1 2024**

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 612067 c/w 635780

Honorable Donald R. Johnson, Judge Presiding

* * * * *

Lloyd N. Shields                         Attorneys for Plaintiff-Appellee,
Elizabeth L. Gordon                      The Lathan Company
Adrienne C. May
Adrian A. D'Arcy
Jeffrey K. Prattini
Andrew G. Vicknair
New Orleans, LA

McClendon, J. Concurs in the Result reached by the majority

Steven F. Griffith, Jr.
Benjamin W. Janke
Camalla K. Guyton
Kennard B. Davis
New Orleans, LA

Attorneys for Defendant-Appellant,
Jacobs Project Management Co./CSRS
Consortium

\* \* \* \* \*

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

**HESTER, J.**

Defendant, Jacobs Project Management Co./CSRS Consortium (Jacobs/CSRS),[1] appeals a judgment of the trial court granting a motion for sanctions filed by The Lathan Co., Inc. (Lathan), striking all of Jacobs/CSRS's defenses to Lathan's claims, disallowing the introduction of any evidence in support of such defenses, and casting Jacobs/CSRS with all fees, costs, and expenses. For the reasons that follow, we reverse in part, vacate in part, amend in part, affirm in part, as amended, and remand for further proceedings consistent herewith.

## FACTS AND PROCEDURAL HISTORY

This protracted litigation began in 2012 and originated from a 2010 construction project at the William Frantz School in New Orleans, Louisiana, (the "project") in which Lathan served as the general contractor. At present, the only remaining defendant is Jacobs/CSRS, who served as the State of Louisiana, Department of Education, Recovery School District's (RSD) representative and construction manager on the project.

Previously, this matter came before this court on Lathan's appeal of the trial court's grant of Jacobs/CSRS's motion for summary judgment, which dismissed Lathan's claims against Jacobs/CSRS. **Lathan Company, Inc. v. State, Department of Education, Recovery School District**, 2016-0913 (La. App. 1st Cir. 12/6/17), 237 So.3d 1, writ denied, 2018-0026 (La. 3/9/18), 237 So.3d 1191. The applicable factual and procedural history, as set forth in **Lathan Company, Inc.**, is as follows:

> On August 13, 2010, The Lathan Company, Inc., entered into a public works contract with the State of Louisiana, Department of Education, Recovery School District ("the RSD") to renovate William Frantz School in New Orleans. Billes Partners, LLC ("Billes") served as architect on the project. Jacobs Project Management

---

[1] Jacobs/CSRS is a consortium between Jacobs Project Management Company, Inc. and CSRS, Inc., which was formed to perform program management and construction management services for the Department of Education, Recovery School District on various school projects.

3

Company/CSRS Consortium ("Jacobs"), through a contract with the RSD, served as the construction manager on the project.

On May 14, 2012, Lathan filed a "Petition for Mandamus," naming the RSD and John White, in his official capacity as the Louisiana Superintendent of Education, as defendants, seeking an order requiring the RSD to make payment of all undisputed amounts owed for Lathan's work. In an amended petition filed on August 1, 2014, Lathan added Billes and Jacobs as defendants.

Lathan's lengthy amended petition, consisting of twenty-five pages and two hundred eighteen paragraphs, alleged, in pertinent part, that Jacobs owed a duty to Lathan to conduct constructability reviews and to oversee and administer the project according to the standard of care of similar professionals in the industry, which Jacobs did not do.

\*    \*    \*

In response, Jacobs filed a motion for summary judgment, seeking a dismissal of Lathan's claims against it. In its memorandum in support of its motion, Jacobs asserted that Lathan's general negligence claims must fail because Jacobs owed no duty to Lathan, since Lathan was not a party to the contract between Jacobs and the RSD. Jacobs additionally urged that because it owed no duty to Lathan, Lathan's [the Louisiana Unfair Trade Practices Act ("LUTPA")] claims must fail as a matter of law. Notwithstanding whether a duty was owed, Jacobs also argued that Lathan's allegations did not rise to the level of an unfair trade practice that is actionable under LUTPA. Alternatively, Jacobs argued that a majority of Lathan's claims against it were prescribed.

Lathan opposed the motion, contending that Jacobs owed it a duty given the high degree of control and power that Jacobs, as a learned professional, held and had exercised (or failed to exercise) over Lathan. Additionally, Lathan argued that its claims against Jacobs were timely because: (1) Billes and Jacobs are joint tortfeasors and thus, the 2012 suit against Billes interrupted prescription as to Jacobs; and (2) Jacobs was still performing work on the project and thus, Lathan's claims against Jacobs are governed by the continuing tort doctrine.

Following argument, the trial court granted Jacobs's motion for summary judgment, finding that Jacobs owed Lathan no duty. As such, the trial court concluded that in the absence of a duty, Lathan could not recover under its negligence theory or LUTPA claims.

**Lathan Company, Inc.**, 237 So.3d at 3-4. On appeal, this court reversed in a split decision, finding the trial court erroneously concluded that there was (or could be) no duty owed by the project manager to the general contractor.[2] **Id.** at 10.

### The 2019 Requests for Production

On remand, Lathan propounded requests for production of documents on Jacobs/CSRS on July 31, 2019. After multiple extensions were granted by Lathan, Jacobs/CSRS provided responses on October 2, 2019. However, the responses included perfunctory general objections and a singular, duplicated response to all thirty distinct requests. As part of the response, Jacobs/CSRS produced 319 pages of project documents, referred to certain items from the "Project [F]ile" previously produced by the RSD, and further responded that the Project File was owned and possessed by the RSD,[3] which Jacobs/CSRS was contractually prohibited from producing to third parties.

Lathan filed a motion to compel on November 8, 2019, seeking to require Jacobs/CSRS to produce all responsive documents in its possession in a reasonably usable format and to produce a privilege log of those documents it claimed were privileged. According to Lathan, the Project File previously produced by the RSD and identified by Jacobs/CSRS in its October 2019 responses were produced in "PDF format" and did not include many of the attachments to emails or other

---

[2] Two judges concluded (with one judge concurring) that "although Jacobs was not in direct contractual privity with Lathan, Jacobs must be deemed and held to know that its services were not only for the protection or interests of the owner but also third parties, including, specifically, Lathan, who was acting as the general contractor on the project"; "it was foreseeable and to a degree certain that Lathan would suffer economic harm if Jacobs failed to perform"; and "there [was] a close connection between Jacob's alleged failure to act according to industry standards, and the alleged economic harm suffered by Lathan." **Lathan Company, Inc.**, 237 So.3d at 9. Two dissenting judges disagreed with the majority's finding that Jacobs owed a duty to Lathan, with whom it had no contractual privity, and found that the majority incorrectly extended Louisiana law beyond its previous limits because the contract between Jacobs and the RSD did not create any duty in favor of Lathan nor did Jacobs render any professional services that would give rise to tort liability in this case. **Id.** at 10-12.

[3] According to Jacobs/CSRS, the RSD production in 2015 included "eight CDs with nearly 100,000 pages of pdf documents," which also included thousands of pages from the Project File as of April 30, 2014.

5

documents to which an attachment was referenced. Jacobs/CSRS opposed the motion, arguing that the Project File through April 30, 2014 was already produced in the litigation by the RSD and that on November 26, 2019 it produced the balance of the Project File from April 30, 2014 through the present. In light of the previous and current production, Jacobs/CSRS maintained that it complied with the discovery requests.

In reply, Lathan argued that Jacobs/CSRS could not hide behind the RSD's prior production of documents in response to the request for production of documents specifically directed to it and that Jacobs/CSRS did not claim that production of responsive documents would cause it to incur an undue burden or expense. While acknowledging that Jacobs/CSRS produced post-April 30, 2014 Project File documents, Lathan maintains that this production was incomplete.

Ultimately, the trial court granted, in part, Lathan's motion, compelling Jacobs/CSRS to produce its post-April 2014 Project Files in the form in which they are ordinarily maintained and which are reasonably usable. Jacobs/CSRS was also ordered to produce a proper privilege log. The January 24, 2020 order further provided that, to the extent that the November 2019 production of its post-April 2014 documents complies with all requirements of the order and that all corrupt files have been corrected and properly produced, Jacobs/CSRS would not be required to further produce such documents. To the extent the November 2019 production did not comply, Jacobs/CSRS was ordered to "reproduce all such documents in strict accordance with this [order]." The order was silent as to pre-April 2014 Project Files.

6

## The RSD Subpoena

On October 6, 2020, Lathan caused a subpoena duces tecum to be issued to the RSD, seeking from it documents[4] exchanged between the RSD, Jacobs/CSRS, and other parties concerning Lathan's work and design deficiencies, among other documents.[5] Lathan specifically sought "all written and electronic correspondence between [the RSD] and Jacobs, [the RSD] and Billes, and [the RSD] and CSRS regarding the Project," as well as "all documents in [the RSD's] possession, custody, or control regarding the Project" and Jacobs/CSRS's "project file."

The RSD responded to the subpoena and, through follow up correspondence with counsel for Lathan, indicated that it produced all responsive and non-privileged emails in native format after searching its records using the terms "Frantz" and "Lathan." The RSD informed Lathan that its own records are stored on a state server, which is separate and apart from Jacobs/CSRS's data over which the RSD has no control. According to the RSD, Jacobs/CSRS maintained a project file for each RSD project, and it produced the applicable Project File as of April 2014 during the 2015 discovery prior to being dismissed from the suit. The RSD further indicated that it was unable to locate the original transmittal it received from Jacobs/CSRS for the 2015 document production. Counsel for the RSD stated that "Jacobs/CSRS provided to the RSD, and the RSD has produced to Lathan, all subsequent project file documents." Moreover, counsel for the RSD clearly conveyed that the RSD had no objection to Jacobs/CSRS producing correspondence or emails with attachments regarding the project, provided that the RSD reserved the right to assert any applicable privilege or legal protection that may apply.

---

[4] "Document" was a defined term in the subpoena that included all correspondence, electronic communications, emails, and corresponding attachments.

[5] According to Lathan, this subpoena was issued to the RSD after the trial court denied its request to compel Jacobs/CSRS to produce all pre-April 2014 documents in a reasonably usable format in response to the July 2019 requests for production. The subpoena issued to the RSD contained requests similar to those requested in the July 2019 requests for production propounded on Jacobs/CSRS.

## The 2021 Interrogatories

On January 11, 2021, Lathan propounded interrogatories on Jacobs/CSRS in an effort to discover facts concerning Jacobs/CSRS's electronic files housing the relevant documents responsive to the July 2019 requests for production, which Lathan maintained Jacobs/CSRS failed to fully produce. The January 2021 interrogatories sought, in part, to identify who maintains Jacobs/CSRS's document management and electronic systems, its retention policies, and the identification and location of the Jacobs/CSRS's maintained and stored e-mail accounts for employees at the time of the RSD construction project.

Jacobs/CSRS responded to the January 2021 interrogatories in February 2021, objecting globally to the discovery requests and objecting to each of the eighteen interrogatories. Only two responses provided information beyond objections. In those responses, Lathan was directed to information previously produced by the RSD in 2015 and to Jacobs/CSRS's prior discovery responses in October and November 2019.[6]

On April 2, 2021, Lathan filed a second motion to compel, maintaining that Jacobs/CSRS "failed and refused to provide responsive emails and documents which it generated, and which should be maintained in its electronic files" in response to the July 2019 requests for production and "without basis or proper objection, ... failed to provide any substantive response" to the January 2021 interrogatories. According to Lathan, Jacobs/CSRS made only piecemeal production and was "secreting its electronic files." Lathan sought, in part, to be allowed to inspect Jacobs/CSRS's electronic files for the project in order to retrieve all relevant and responsive documents or, in the alternative, to require Jacobs/CSRS to conduct a

---

[6] We note that the responses to the January 2021 interrogatories referenced October and November 2020 productions; however, the record indicates that the correct dates of the relevant production were October and November 2019 when Jacobs/CSRS produced the balance of the Project File.

good faith search of its electronically stored information and produce all relevant emails and documents. Lathan again requested that Jacobs/CSRS be required to provide a privilege log for documents to which a privilege was claimed.

Lathan informed the trial court that, despite Jacobs/CSRS's position that all non-privileged information relevant to the matter was properly preserved and produced through the RSD's document production in 2015, a review of the documents later produced by the RSD in response to the October 2020 subpoena revealed that Jacobs/CSRS's position was inaccurate. The 2015 production did not include all of Jacobs/CSRS's relevant documents and information responsive to the July 2019 requests for production propounded on Jacobs/CSRS. Lathan identified the deficiencies as follows:

(1) 771 emails previously produced by the RSD in 2015 (who originally received these documents from Jacobs/CSRS) lacked their original attachment and were unusable, 751 of which were emails to, from, or copied to Jacobs/CSRS employees and which would be responsive to the 2019 requests for production;

(2) a review of the documents produced by RSD in response to the October 2020 subpoena revealed there were a significant number of relevant and responsive emails to, from, or copied to Jacobs/CSRS employees that were not included with the 2015 production, showing that the initial production being relied upon by Jacobs/CSRS was an incomplete response to the July 2019 requests for production; and

(3) the October 2020 subpoena response by the RSD also revealed that at least one category of relevant and responsive documents, *i.e.*, "meeting minutes" generated by Jacobs/CSRS, were not included in the 2015 production, demonstrating again that the initial production being relied upon

9

by Jacobs/CSRS was an incomplete response to the July 2019 requests for production.

Lathan further argued that Jacobs/CSRS's responses to the 2021 interrogatories, consisting of objections and two extremely limited responses, were insufficient. Because the interrogatories sought information reasonably calculated to the discovery of admissible evidence, Lathan argued that it was entitled to an order compelling Jacobs/CSRS to fully respond.

Jacobs/CSRS opposed the second motion to compel, maintaining that the "project file" had been produced "as it is kept in the usual course of business." According to Jacobs/CSRS, employees for both the RSD and Jacobs/CSRS worked in the same office space and simply discussed the project without sending electronic communications. Jacobs/CSRS posited that it would be "a complete waste of party and judicial resources to require [it] to make a duplicative production." Additionally, Jacobs/CSRS argued that no good cause existed under La. Code Civ. P. art. 1462(E)[7] to afford Lathan access to its electronically stored information. Jacobs/CSRS contended that the pre-April 2014 Project File, which included emails, was previously produced in the 2015 production, and Jacobs/CSRS produced the post-April 2014 Project File, inclusive of emails, prior to the trial court's January 23, 2020 order granting Lathan's first motion to compel.

Regarding the 2021 interrogatories, Jacobs/CSRS maintained that it fully and properly responded to the discovery by properly objecting to the requests.

---

[7] Louisiana Code of Civil Procedure article 1462(E) provides as follows:

If the requesting party considers that the production of designated electronically stored information is not in compliance with the request, the requesting party may move under Article 1469 for an order compelling discovery, and in addition to the other relief afforded by Article 1469, upon a showing of good cause by the requesting party, the court may order the responding party to afford access under specified conditions and scope to the requesting party, the representative of the requesting party, or the designee of the court to the computers or other types of devices used for the electronic storage of information to inspect, copy, test, and sample the designated electronically stored information within the scope of Articles 1422 and 1425.

Jacobs/CSRS noted that La. Code Civ. P. art. 1458 provides that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer." Further, Jacobs/CSRS observed that Lathan did not argue that the objections made by Jacobs/CSRS were improper and did not even address the merits of the objections. Jacobs/CSRS was critical of Lathan's actions in the case ("sleuthing in subpoenaing records," "side-show distraction," "exercises smoke-and-mirror tactics," with the "only activity that Lathan has engaged in for the past two years has been nit-picky discovery motions"), and averred as follows:

> The crux of the present Motion is that the RSD, in response to Lathan's subpoena, has produced certain email correspondence that are to/from or carbon copy [to] Jacobs/CSRS personnel that are not contained in the Project file, and that somehow, this renders Jacobs/CSRS's production deficient. The fact that the RSD, the owner of the project, maybe [sic] in possession of documents somewhere in some file that did not make it into the Project file is of no moment. The Project file, which includes email correspondence, has been produced as it is ordinarily maintained, and Lathan has not (because it cannot) show that good cause exists to afford it access to Jacobs/CSRS's electronically stored information. Stated differently, Lathan's Motion constitutes nothing more than an attempt to obtain a third bite at the apple. This Court should (again) decline to grant Lathan the relief it requests.

In reply, Lathan was equally critical of Jacobs/CSRS's actions (its "incendiary misstatements," "flagrant disregard of its discovery obligations," "blustering mutilation of the facts").[8] Substantively, Lathan argued that Jacobs/CSRS cannot

---

[8] We note that the record in this matter is overwrought with colorful language and mocking retorts that are ill-suited for pleadings presented to the court. As this court stated in **Cooper v. United Southern Assurance Co.**, 97-0250 (La. App. 1st Cir. 9/9/98), 718 So.2d 1029, 1039:

> We take this opportunity to remind all counsel that as attorneys and officers of the court, they are required to "conduct [themselves] at all times with decorum, and in a manner consistent with the dignity and authority of the court and the role which [they] should play in the administration of justice." La. C.C.P. art. 371. This article also mandates that attorneys treat the court, witnesses, opposing party, and opposing counsel with due respect. ... The legal profession demands integrity, professionalism and a strict adherence to the rules of propriety. Although attorneys should zealously represent their clients' interests, we believe in this instance ... counsel stepped precariously close to the line which separates zealous representation from unprofessional conduct.

(Emphasis removed; footnote omitted.)

11

"redo" something it has never done, *i.e.*, produce the Project File as *Jacobs/CSRS* maintained it in the ordinary course of business as opposed to how the RSD "kept" the Project File as it received it from Jacobs/CSRS who had custody and control over it, notwithstanding the RSD's contractual ownership of the file. Lathan further argued that the July 2019 requests for production and the 2021 interrogatories included requests beyond the Project File, specifically requesting certain written and electronic correspondence, documents, emails, and electronically stored data. Moreover, Lathan maintained that the 2021 interrogatories permissibly sought the discovery of the substance of the claims and defenses as well as information concerning the existence and location of the discoverable matter pursuant to La. Code Civ. P. art. 1422.[9]

On June 8, 2021, the trial court issued an order granting the motion to compel, ordering Jacobs/CSRS to comply with the following within forty-five (45) days of the entry of the order:

> 1. Jacobs/CSRS will provide to Lathan a list of all computers, servers, or other types of devices belonging to Jacobs/CSRS and its subsidiaries, affiliates, employees, as well as every other individual who, because acting as Jacobs/CSRS's agent or representative, can be required by Jacobs to furnish such information, used for the electronic storage of emails and information dated prior to April 30, 2014 pertaining or in any way related to or concerning the project entitled "Renovations & Addition at William Frantz School," 3811 N. Galvez St., New Orleans, LA 70117, Project Number. 2009-0114-0003 ("Project"). At a minimum, such devices shall be those that include all of the emails to or from the Jacobs employees listed in Lathan's Request For Production No. 4, any Jacobs employee listed in Lathan's Exhibit "12" entered into evidence at the hearing, Herschal Acosta (Lathan Exhibit "15"), David

---

[9] Louisiana Code of Civil Procedure article 1422 provides:

Unless otherwise limited by order of the court in accordance with this Chapter, the scope of discovery is as set forth in this Article and in Articles 1423 through 1425.

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

12

Schneider (Lathan Exhibit "16"), and Marie Bennett (Lathan Exhibit "18"), and all documents responsive to Lathan's Requests for Production Nos. 1, 2, 3, 5, 6, 10, 13, 16 through 19, 24, and 28 (collectively, "Servers"). The Servers shall not be limited to what Jacobs calls its "Project file."

2. Jacobs/CSRS and Lathan shall meet and confer to determine limited key terms agreed to by the parties in order to search the Servers for all emails and electronically stored information prior dated or generated to April 30, 2014;

3. Lathan shall appoint a representative to participate with a Jacobs/CSRS representative in *the on-site investigation and search for emails and electronically stored data on the Servers on a day-to-day basis, and said investigation shall be completed as expeditiously as possible.*

4. *All documents containing one or more of the search terms shall be separately saved and indexed on a Control Sheet (index) that identifies every document located (without revealing any content), which shall be produced to counsel for Lathan and Jacobs/CRS immediately after the on-site inspection is completed.* Jacobs/CSRS's [sic] will review the Control Sheet and redact any privileged information that may appear therein. Jacobs/CSRS's counsel will also review the entire production for privilege and relevance. Jacobs/CSRS's counsel will then produce relevant, unprivileged documents to Lathan's counsel, together with the entire index, as redacted. Jacobs's counsel will also produce a "privilege log" for all items deemed privileged or work product. The documents not objected to, the redacted index, and the privilege log must be produced by Jacobs/CSRS to counsel for Lathan no later than 45 days from entry of this Judgment. If Lathan disagrees that any of these documents are protected by attorney/client privilege, those documents will be subject to an in-camera review by the Court.

(Emphasis added.)

Motion for Sanctions

On October 26, 2021, Lathan filed a motion for sanctions pursuant to La. Code Civ. P. art. 1471, maintaining that Jacobs/CSRS was in contempt of and willfully failed to fully comply with the June 8, 2021 contempt order. The motion was supported by the affidavit of Lathan's counsel, Elizabeth L. Gordon, which affidavit included nineteen exhibits. Jacobs/CSRS opposed the motion, supported by one exhibit. Lathan's reply memorandum included additional exhibits in support.

At the hearing on December 6, 2021, Lathan offered the affidavit of Ms. Gordon, a portion of the exhibits originally attached thereto, and six additional

13

exhibits not referenced in the affidavit.[10]  No exhibits were offered on behalf of Jacobs/CSRS at the hearing.  While Lathan attempted to present the testimony of Ms. Gordon, Jacobs/CSRS objected to the testimony.[11]  The trial court sustained the objection, noting that Lathan's counsel was "artful enough to show me what's in the affidavit."  After only hearing argument from counsel, the trial court ordered the parties to submit proposed resolutions on the motion for sanctions, clarifying that "I just want your statement of what you think the facts should be and what the conclusions should be, and then give me a judgment."

On February 1, 2022, the trial court signed a judgment, granting the motion for sanctions, specifically providing as follows:

1. Jacobs/CSRS's violations of the June 8, 2021 Judgment were willful and in bad faith; that considering Jacobs/CSRS's repeated failure to allow Lathan to participate in any meaningful investigation and search of the emails and electronically stored data (among other violations of the Judgment specifically set forth in the Findings of Fact and Conclusions of Law), and its prior culpable conduct in this matter, less drastic sanctions would be ineffective; and that Jacobs/CSRS's violations unequivocally prejudiced Lathan's ability to timely begin preparations necessary to bring this matter to trial.

2. All of Jacobs/CSRS's defenses to Lathan's claims are hereby stricken and Jacobs/CSRS shall not be allowed to present any evidence in support of such defenses.

3. Lathan shall be and hereby is awarded all fees, costs and expenses (collectively "Fees") it incurred as a result of Jacobs/CSRS's non-compliance with the Judgment, as well as the "Fees" it incurred to bring the Sanctions Motion and the previous motion to compel on which the Judgment was based.

---

[10] The original exhibits A-B and D-R attached to the affidavit were offered, along with the new exhibits T-Y.

[11] Jacbos/CSRS's objected, in part, on the basis that Ms. Gordon already submitted an affidavit such that whatever she would state during testimony "would either be superfluous or a surprise because we haven't heard it before," and that it would be "duplicative and ... extend what is effectively a[n] already lengthy day." Jacobs/CSRS also referenced Rule 3.7 of the Professional Rules of Conduct, stating that the rule "prohibits a lawyer from also acting as a witness." But see **Jordan v. Intercontinental Bulktank Corp.**, 621 So.2d 1141, 1148-49 (La. App. 1st Cir.), writs denied, 623 So.2d 1335 and 1336 (La. 1993) (Rule 3.7 does not prohibit attorneys from testifying at a trial about facts essential to the case; rather, this rule prohibits attorneys from acting as advocates in trials in which they are likely to be called as witnesses.).

14

4. Concerning the award of "Fees" to Lathan immediately above, within 30 days of signing of this Judgment, Lathan shall submit to this Court for its consideration and ruling evidence supporting the Fees that Lathan incurred or expended.[12]

<u>Appellate Review</u>

On February 10, 2022, Jacobs/CSRS timely filed its notice of intention to apply for supervisory writs and request for a return date with the trial court and timely filed its application with this court. In an unpublished writ action, this court issued the following ruling:

> **STAY DENIED; WRIT GRANTED WITH ORDER.** The trial court's judgment signed on February 1, 2022 granted the motion for sanctions filed by The Lathan Company based on its finding that Jacobs Project Management Company/CSRS Consortium violated the court's June 8, 2021 judgment. The judgment also awarded The Lathan Company "all fees, costs and expenses (collectively "Fees")," but did not specify the amount of the award. The amendment to Subparagraph (A)(10) of La. Code Civ. P. art. 2088 clarifies that the trial court retains jurisdiction for purposes of setting "costs, expert witness fees, and attorney fees" after an appeal has been taken from the initial judgment. See Comments--2021(a). Accordingly, we find the February 1, 2022 judgment is a final, appealable judgment. See La. Code Civ. P. art. 1915(A)(6); **Capital City Press, LLC v. Louisiana State University System Board of Supervisors**, 2013-1994 (La. 8/28/13), 120 So. 3d 250. Therefore, it is ordered that this case be remanded to the district court with instruction to grant Jacobs Project Management Company/CSRS Consortium an appeal pursuant to the February 10, 2022 pleading notifying the trial court of its intention to seek writs. See **In re Howard**, 541 So. 2d 195 (La. 1989) (*per curiam*). A copy of this court's action is to be included in the appellate record.

**Lathan Co. v. Department of Education**, 2022-0215 (La. App. 1st Cir. 6/21/22), 2022 WL 2230376 (unpublished).

---

[12] Portions of the February 1, 2022 judgment are sometimes hereinafter identified by numbered paragraphs, corresponding to the numbers utilized in the judgment.

15

On remand, Lathan submitted a proposed order of appeal, indicating that the order was agreed to by Jacobs/CSRS, and this appeal followed.[13] Jacobs/CSRS's primary assignment of error is the trial court's imposition of sanctions – particularly, the striking of all of its defenses in paragraph one, which is a draconian penalty reserved for the most culpable conduct under extreme circumstances (Assignment of Error No. 1). Jacobs/CSRS argues that the imposition of sanctions was erroneous given the following underlying errors: (1.1) the trial court's February 1, 2022 judgment improperly references "Findings of Fact and Conclusions of Law" in paragraph one, which Jacobs/CSRS argues do not even exist[14]; (1.2) the record reflects that Jacobs/CSRS complied with the four directives set forth in the June 8, 2021 order, evidenced by the completed "rolling document production" and the "re-production of documents previously provided to Lathan in 2015"; (1.3) the timing of Jacobs/CSRS's document production has not prejudiced Lathan's ability to prepare for trial; and (1.4) the trial court subsequently issued an award of attorney's

---

[13] Following the lodging of the instant appeal, this court, *ex proprio motu*, issued a rule to show cause order, finding an apparent defect in the February 1, 2022 judgment. The judgment contained an award of fees, costs, and expenses without including a specific amount. While the trial court is divested of jurisdiction over all matters reviewable under the appeal once an appeal is granted, it retains jurisdiction during the pendency of the appeal to set and tax costs, expert witness fees, and attorney fees. La. Code Civ. P. art. 2088(A)(10) and Comments-2021, comment (a). Louisiana Code of Civil Procedure article 1920 provides that "[u]nless the judgment provides otherwise, costs shall be paid by the party cast, and *may be taxed by a rule to show cause.*" (Emphasis added.) Because the February 1, 2022 judgment specifically noted that the determination of the amount of fees, costs, and expenses would be made at a later date, over which the trial court retains jurisdiction pursuant to La. Code Civ. P. art. 2088(A)(10), we do not find that the judgment lacks appropriate decretal language. Therefore, we recall the rule to show cause order and maintain the appeal.

[14] We do not find merit in this alleged error. The February 1, 2022 judgment is complete in its determination and ruling on the motion for sanctions and the sanctions issued, and it is of no consequence that the judgment contains surplus language. See **Harvey v. Collins**, 2020-0840 (La. App. 1st Cir. 4/16/21), 2021 WL 1452210, *4 (unpublished), writ denied, 2021-00683 (La. 9/27/21), 324 So.3d 96.

fees on an *ex parte* basis without allowing Jacobs/CSRS the opportunity to file an opposition.[15]

## LAW AND ANALYSIS

In this matter, our inquiry is focused on whether the trial court was manifestly erroneous in finding that Jacobs/CSRS failed to obey a trial court order compelling discovery[16] and whether the trial court abused its discretion in imposing sanctions pursuant to La. Code Civ. P. art. 1471. A trial court has much discretion in imposing sanctions for failure to comply with discovery orders, and its ruling should not be reversed absent an abuse of discretion. **Hutchinson v. Westport Ins. Corp.**, 2004-1592 (La. 11/8/04), 886 So.2d 438, 440 (per curiam).

Louisiana Code of Civil Procedure article 1471 provides,[17] in pertinent part, as follows:

> A. If a party ... fails to obey an order to provide or permit discovery, including an order made under Article 1464 or 1469, the court in which the action is pending may make such orders in regard to the failure as are just, including any of the following:
>
> (1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

---

[15] In Assignment of Error No. 1.4, Jacobs/CSRS refers to the trial court's order, awarding Lathan $109,216.16 in fees, which was signed on March 15, 2022. We decline to consider any alleged error concerning the actions of the trial court issued *after* the rendition of the February 1, 2022 judgment appealed.

Moreover, Jacobs/CSRS acknowledges in its brief that the March 15, 2022 order is "not specifically on appeal here (it is stayed pending the resolution of this Appeal)" and that the action of the trial court opposed by Jacobs/CSRS in this appeal is the issuance of any sanctions at all. Accordingly, we address Jacobs/CSRS's alleged error concerning that portion of the February 1, 2022 judgment awarding attorney fees and expenses as sanctions in our analysis of Assignment of Error No. 1.

[16] The appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. **Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC**, 2014-2592 (La. 12/8/15), 193 So.3d 1110, 1115.

[17] We note that Acts 2021, No. 174 §1 amended La. Code Civ. P. art. 1471(A)(3), replacing "final default judgment" with "default judgment." The amendment was made effective on January 1, 2022, after the motion was filed and before the judgment was issued by the trial court. Section 7 of the Act specifically states that it "shall apply to default judgments rendered on or after" the effective date.

17

*(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.*

*(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a default judgment against the disobedient party upon presentation of proof as required by Article 1702.*

*(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.*

. . .

*B. Absent exceptional circumstances, a court may not impose sanctions under this Article on a person or party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.*

*C. In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.*

In this matter, the trial court issued orders compelling Jacobs/CSRS to respond to discovery, with the June 2021 order being the subject of the motion for sanctions. Any failure by Jacobs/CSRS to comply with the trial court's orders subjected them to further orders of the court, including the possibility of sanctions as specified in La. Code Civ. P. art. 1471.

<u>Did Jacobs/CSRS fail to comply with the June 2021 order of the trial court?</u>
<u>(Assignment of Error No. 1.2)</u>

The trial court made a factual determination that Jacobs/CSRS failed to comply with the June 2021 order. Accordingly, this court cannot set aside this determination unless the factual determination is clearly wrong. **Stobart v. State through Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1993).

Regarding Item 4 of the June 2021 order, Lathan acknowledged that Jacobs/CSRS produced 1,674 emails (including their attachments and totaling

18

125,379 pages) with a privilege log on July 23, 2021, 8,082 emails (250,949 pages) on October 22, 2021, 11,979 emails (188,342 pages) on November 24, 2021, and 246 emails (3,792 pages) on December 4, 2021. Jacobs/CSRS also produced non-privileged portions of the Project File and a privilege log on October 6, 2021. The October, November, and December 2021 productions were beyond the July 23, 2021 deadline set by the trial court in the June 2021 order, but do demonstrate Jacobs/CSRS's willingness to comply with the trial court's order. Additionally, Jacobs/CSRS has never produced to Lathan a "Control Sheet" as directed in Item 4, which was to be an index of all documents containing one or more of the search terms, identifying every document located (without revealing its contents).[18]

In accordance with Item 2 of the June 2021 order, the parties successfully met and conferred to determine limited key terms in which to use in the search of the servers for emails and electronically stored information prior to the order deadline of April 30, 2014. Further, counsel for Jacobs/CSRS and Lathan discussed custodians, and counsel for Jacobs/CSRS identified and described two servers hosting emails and other electronically stored data responsive to the judgment, which were located at CSRS's office in Baton Rouge, Louisiana.

While the parties appointed representatives to participate in the on-site investigations and search in accordance with Item 3 of the June 2021 order, no such on-site investigation occurred. Rather, a one-hour virtual meeting (via Webex video conferencing) was held on July 9, 2021, along with a second meeting on August 19, 2021.

At the July 9, 2021 virtual meeting, counsel for Lathan, Ms. Gordon, and Lathan's designated representative, Dr. Michael Black, conferred virtually with counsel for Jacobs/CSRS, Benjamin Janke, and Jacobs/CSRS's representative,

---

[18] We note that on July 26, 2021, Jacobs/CSRS provided a forty-five-page "folder structure" of the files maintained in the Project File on the servers.

Sandy Roppolo, who was the Director of Technology for CSRS, Inc. During this virtual meeting, two screens from one of the identified servers was shared by Mr. Roppolo, but Lathan maintained that its access was restricted. Regarding the second server, Mr. Roppolo shared one screen containing a listing of general project folders, and Mr. Janke indicated that these were the applicable folders for the project, all of which were copied and produced in the 2015 production by the RSD. When counsel for Lathan asked that the folders be opened, Mr. Janke denied the request.

Later, on August 19, 2021, another Webex call was scheduled to go over the search that was rerun by Jacobs/CSRS after discovering that the prior search using old software resulted in an unintentional restricted search, despite the use of proper search terms. While Lathan again requested that it be permitted to perform an investigation and search of the servers, only a Webex call with counsel for both parties, Dr. Black, and Mr. Roppolo participating occurred. Lathan maintains that it was on this call that it learned that Jacobs/CSRS had only identified a portion of the servers housing emails used by Jacobs/CSRS representatives on the project. Only the email server hosting the "jacobscsrs.com" domain was searched, and the initial and subsequent search did not include the "jacobs.com" and "csrsonline.com" email domains. The record does not indicate what else transpired during the August 19, 2021 Webex call.

Based on our review of the designated record,[19] particularly the affidavit of Ms. Gordon, a reasonable basis exists for the trial court's determination that Jacobs/CSRS failed to comply with the June 2021 order. We are unable to conclude that the trial court was manifestly erroneous in so finding. **Stobart**, 617 So.2d at 882 (to reverse a trial court's findings, an appellate court must determine that there exists no reasonable basis for the trial court's factual finding and the record shows

---

[19] The record was designated on appeal by Jacobs/CSRS.

the finding is clearly wrong or manifestly erroneous after a review the record in its entirety). Accordingly, this portion of Jacobs/CSRS's assignment of error (No. 1.2) is without merit.

Did the trial court abuse its discretion in issuing sanctions?
(Assignments of Error No. 1 and 1.3)

Having determined that the trial court was not manifestly erroneous in finding that Jacobs/CSRS failed "to obey an order to provide or permit discovery" in accordance with La. Code Civ. P. art. 1471(A), it must be determined whether the trial court abused its wide discretion in issuing sanctions. **Hutchinson**, 886 So.2d at 440.

A trial court has the authority to impose sanctions on a party for discovery misconduct under both its inherent power to manage its own affairs and the discovery articles provided in the Louisiana Code of Civil Procedure. **Carter v. Hi Nabor Super Market, LLC**, 2013-0529 (La. App. 1st Cir. 12/30/14), 168 So.3d 698, 703, writ denied, 2015-0190 (La. 4/17/15), 168 So.3d 399. Under La. Code Civ. P. art. 1471, when a party refuses or is unable to comply with a discovery order, the trial court in a pending action "may make such orders in regard to the failure as are just," thereby granting the trial court broad discretion to impose a range of sanctions. **Id**. at 703-04.

Louisiana Code of Civil Procedure article 1471(A) provides authority for the imposition of sanctions by the trial court. In this regard, the trial court elected to impose multiple sanctions, striking all of Jacobs/CSRS's defenses to Lathan's claims and decreeing that Jacobs/CSRS "shall not be allowed to present any evidence in support of such defenses" (paragraph two). Additionally, the trial court awarded Lathan "all fees, costs and expenses (collectively 'Fees') it incurred as a result of Jacobs/CSRS's non-compliance with the [June 2021 order], as well as the 'Fees' it

21

incurred to bring the Sanctions Motion and the previous motion to compel on which the [June 2021 order] was based" (paragraph three).

Regarding the issuance of expenses and attorney fees as sanctions, La. Code Civ. P. art. 1471(C) provides:

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Finding no error in the trial court's determination that Jacobs/CSRS failed to comply with the June 2021 order, we do not find that the trial court was manifestly erroneous in awarding expenses and attorney fees as sanctions. Considering the record on appeal, we further find no justification or other circumstances that would render an award of expenses and attorney fees pursuant to La. Code Civ. P. art. 1471(C) unjust under the circumstances herein.

However, the language in paragraph three of the February 1, 2022 judgment is overly broad, awarding sums not contemplated by La. Code Civ. P. art. 1471(C). See **Cracco v. Barras**, 520 So.2d 371, 372 (La. 1988) ("Attorney's fee statutes must be construed strictly because the award of attorney fees is exceptional and penal in nature."). Louisiana Code of Civil Procedure article 1471(C) prescribes that the trial court shall require the payment of "the reasonable expenses, including attorney fees, *caused by the failure*" to obey the order. (Emphasis added.) The reasonable expenses and attorney fees recoverable under La. Code Civ. P. art. 1471(C) is expressly limited, and we find that the trial court abused its discretion in awarding additional expenses and attorney's fees not contemplated therein. Accordingly, we

22

vacate paragraph three and amend this portion of the judgment to conform to the language of La. Code Civ. P. art. 1471(C).[20]

We now consider whether the sanction of striking all of Jacobs/CSRS's defenses to Lathan's claims and decreeing that Jacobs/CSRS "shall not be allowed to present any evidence in support of such defenses" in paragraph two was an abuse of the trial court's discretion. The ultimate sanction for a recalcitrant plaintiff who fails to comply with discovery orders is dismissal of the suit, and the ultimate sanction for such a defendant is the issuance of a default judgment. **Skidmore v. Salvadras**, 496 So.2d 435, 437 (La. App. 1st Cir. 1986). In **Raby v. Orkin, LLC**, 2018-0224 (La. App. 1st Cir. 9/21/18), 2018 WL 4519958, *3 (unpublished), this court observed that preventing a plaintiff from supporting his claims for personal injuries and prohibiting him from introducing evidence to prove his claim was "equivalent to a dismissal of his cause of action altogether."

Additionally, in **Boyer v. Kokkinis**, 51,598 (La. App. 2d Cir. 9/27/17), 244 So.3d 652, 658, writ denied, 2017-2058 (La. 2/2/18), 235 So.3d 1112, the Second Circuit Court of Appeal similarly determined that the sanction of prohibiting the appellant from using certain records in support of its claims and defenses or in opposition to plaintiff's claims was "the functional equivalent of dismissal of the appellants' reconventional demand and default judgment against them on the main demand."[21] The court in **Boyer** concluded that the same justifications required for

---

[20] Additionally, we vacate paragraph four of the February 1, 2022 judgment, as it referenced paragraph three and contemplated a deadline dependent on an event, *i.e.*, the "signing of this Judgment," which is now inapplicable.

[21] Also, see **Matter of Succession of Morris**, 2019-0562 (La. App. 1st Cir. 6/17/20), 312 So.3d 285, 293, writ denied, 2020-01180 (La. 12/8/20), 306 So.3d 435, wherein this court acknowledged that most of the less-severe alternative sanctions available under La. Code Civ. P. art. 1471 would have yielded the same result as a dismissal. In the *Morris* case, the appellant's status as a forced heir was the sole remaining issue before the trial court. This court concluded that deeming certain facts relating to forced heirship proven for purposes of litigation, prohibiting her from introducing evidence relative to forced heirship, and striking all the appellant's allegations of forced heirship in the pleadings would all ultimately result in the dismissal of appellant's claims. **Id.** at 293-94.

dismissal and default judgment were necessary for the imposition of these sanctions. **Id.** Likewise, we find that the sanctions at issue herein, striking *all* of Jacobs/CSRS's defenses to Lathan's claims and prohibiting Jacobs/CSRS from presenting *any* evidence in support of such defenses, are tantamount to entering a default judgment against Jacobs/CSRS. Therefore, we analyze whether the trial court abused its discretion accordingly.

As stated in the seminal Louisiana Supreme Court case, **Horton v. McCary**, 635 So.2d 199, 203 (La. 1994), dismissal and default are generally reserved for those cases in which the client, as well as the attorney, is at fault. Before taking the drastic action of dismissal for a discovery violation, a court should consider the following four factors (often referred to as the "**Horton** factors"): (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violations prejudiced the opposing party's trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney. **Hutchinson**, 886 So.2d at 440; **Horton**, 635 So.2d at 203. Dismissal is justified only if the record contains sufficient evidence of a party's (as opposed to counsel's) willful disobedience, bad faith, or fault. **BancorpSouth Bank v. Kleinpeter Trace, L.L.C.**, 2013-1396 (La. App. 1st Cir. 10/1/14), 155 So.3d 614, 631, writ denied, 2014-2470 (La. 2/27/15), 159 So.3d 1067 (citing **Lirette v. Babin Farm, Inc.**, 2002-1402 (La. App. 1st Cir. 4/2/03), 843 So.2d 1141, 1143 and **In re Medical Review Panel**, 1999-2088 (La. App. 1st Cir. 12/22/00), 775 So.2d 1214, 1218).

In considering the first and second **Horton** factors, the record does not contain sufficient factual information on which this court could appropriately evaluate whether the violation was willful or whether less drastic sanctions would be effective. We additionally note that, with respect to the first **Horton** factor, there is no evidence that the violation was due to an inability of Jacobs/CSRS to comply.

24

Further, the record does not contain any motions or pleadings that were filed on behalf of Jacobs/CSRS seeking relief from Lathan's discovery requests or the trial court's orders to compel, *e.g.*, motions to quash, for protective order, or for extension of time.[22]

Regarding the third **Horton** factor – whether the violations prejudiced Lathan's trial preparation – we note that in many of the cases in which courts have upheld the drastic sanction of dismissal or default, a trial date was set and the recalcitrant party's actions hindered trial preparation or necessitated a continuance of the trial.

In **Matter of Succession of Morris**, 2019-0562 (La. App. 1st Cir. 6/17/20), 312 So.3d 285, 290, writ denied, 2020-01180 (La. 12/8/20), 306 So.3d 435, trial was set for September 28, 2018. After the discovery propounded on appellant on August 30, 2017, was never answered, a motion to compel was filed with a hearing set on December 18, 2017. **Id.** at 287-89. While responses were provided by appellant on the eve of the hearing, the responses contain "very minimal information." **Id.** at 289. The motion to compel was granted, and the appellant provided supplemental responses on January 18, 2018, which provided no answers of any substance and indicated, "Please see attached," while never attaching any documents. **Id.** at 289-90. In fact, this court described appellant's response as "untimely, evasive, and incomplete at best." **Id.** at 293. With the trial date set within two weeks of the hearing on the motion for sanctions (filed over three months prior), this court concluded that there was actual prejudice to the party propounding discovery.

In **Hutchinson**, trial was set for April 21, 2003. The appellants failed to respond to interrogatories and requests for production of documents, resulting in a contempt order on November 27, 2002. **Hutchinson**, 886 So.2d at 439-40. The

---

[22] Further, the parties do not allege that any such motions were filed.

appellants obtained an extension of time to respond, but failed to comply with the order. **Id**. at 440. The Supreme Court determined that the appellants' "failure to cooperate in discovery made it impossible for the defense to proceed and placed the defense at a disadvantage if they had to try the case without the discovery." **Id**. at 441.

In **McWilliams v. Exxon Mobil Corp.**, 2012-1288 (La. App. 3d Cir. 4/3/13), 111 So.3d 564, 573, writ denied, 2013-1402 (La. 11/8/13), 125 So.3d 451, the Third Circuit Court of Appeal specifically noted that the appellants had squandered every opportunity to proceed in the litigation properly, ignoring deposition requests for months on end and forcing the trial court to continue the matter from May 2011 to January 2012 in an attempt to have the appellants comply with discovery orders.[23] Even with the additional time provided for trial, the appellants failed to make any good faith effort to participate in discovery. **Id**.

In the present case, the matter was not set for trial and there was no scheduling order in place setting discovery deadlines. Under the specific facts of this case, we find that the trial court erred in finding that Jacobs/CSRS's violations prejudiced Lathan's trial preparation. Accordingly, we find merit in Jacobs/CSRS's Assignment of Error No. 1.3.

Lastly, concerning the fourth **Horton** factor – whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney – we do not find that the evidence in the record establishes the client's involvement in this case. In **In re Medical Review Panel**, 1999-2088 (La. App. 1st Cir. 12/22/00), 775 So.2d 1214, 1218-19, this court explicitly stated as follows:

> Although the trial court has wide discretion in fashioning a remedy pursuant to those provided in La. C.C.P. art. 1471, the record must contain sufficient evidence of plaintiff's willful disobedience, bad faith,

---

[23] We note that Lathan argues that it was prejudiced by not being able to "prepare its case against Jacobs/CSRS or proceed with depositions until it has all relevant documents it has requested." However, Lathan does not claim to have made any attempts to schedule depositions pursuant to La. Code Civ. P. arts. 1437 or 1442 nor did it provide evidence of such attempts.

or fault, in order to justify the dismissal. *If the record does not contain evidence of plaintiff's, rather than counsel's fault, the trial court, if it grants dismissal, abuses the wide discretion afforded it by La. C.C.P. art. 1471.*

(Emphasis added.) Accordingly, in order to support the severe sanctions in this matter, there must be evidence of the party's fault in the violation of the June 2021 order.

In **Horton**, 635 So.3d 199, the defendants failed to answer interrogatories and respond to a request for production of documents. A motion to compel compliance was filed, and the trial court issued an order requiring compliance within ten days and indicating that "if defendants fail to obey this order, the court will order such penalties as are provided by Louisiana Code of Civil Procedure article 1471, which penalties include, inter alia, the granting of a judgment by default against the disobedient party." **Id.** at 200. The defendants responded, but the plaintiffs filed a motion for contempt, alleging that the discovery responses were incomplete and unresponsive and sought the entry of a default judgment against the defendants. Finding that the defendants followed a pattern of concealing discoverable information, the trial court entered a default judgment in favor of the plaintiffs on the issue of liability.

Noting the four factors, the Supreme Court expressly acknowledged that the defendants, through counsel, gave incorrect and incomplete responses to discovery, shortly before the trial date, which subjected plaintiffs to possible surprise and prejudice. However, with no evidence that the client itself participated in the violation of the trial court's discovery orders, the Supreme Court reversed the default judgment on liability and ordered the trial court to conduct a hearing in order to determine who was responsible to failure to comply with the discovery orders. **Horton**, 635 So.2d at 203.

27

Moreover, in **BancorpSouth Bank**, 155 So.3d at 636, this court observed that, "[w]hile the trial court's hearings elucidated the extent of BancorpSouth's failures to respond to discovery requests, those failures do not, as a matter of law, support the ultimate sanction of dismissal of BancorpSouth's claims." The Fourth Circuit Court of Appeal in **Payne v. Green**, 2000-1655 (La. App. 4th Cir. 8/30/00), 769 So.2d 650, 653, reversed that portion of the trial court's judgment striking the answers filed by defendant, stating that "[t]he problem is that the clients may be getting punished for their attorneys' misconduct," and concluded that they were entitled to a hearing to determine whether they were at fault.

In this case, Lathan asserted in its memorandum in support of sanctions that Jacobs/CSRS, as the client, was at fault, willfully disobeyed the June 2018 order, and acted in bad faith. Lathan argued that: (1) it made multiple requests to participate in an onsite investigation, which "requests would likely have to be cleared through Jacobs/CSRS"; (2) Jacobs/CSRS's Director of Technology, Mr. Roppolo "heard Lathan's analysis of the [June 2021 order's] language and request for a subsequent on-site inspections [sic]"; (3) Jacobs/CSRS participated and acquiesced in the willful denial of Lathan's right to participate in the investigation and search and decided in bad faith to ignore the trial court's authority and mandates of the June 2021 order; and (4) Mr. Roppolo "participated in and perhaps lead [sic] the email search which knowingly excluded two of the three clearly applicable domains under the [June 2021 order]."

The affidavit of Ms. Gordon provided the following relative to Mr. Roppolo's participation:

14. On the Webex video conference call on July 9, 2021, I participated in a discussion with Mr. Roppolo and Dr. Black concerning some technical issues and parameters of the Servers generally. Dr. Black requested remote access to information on the Servers, which Jacobs/CSRS denied. In the Webex video call, Mr. Roppolo shared two screens from the Outlook server, but did not provide Lathan access to see what other files from the

28

Frantz project may have been located on the outlook server or how the files or other data were maintained. As for the "Project file" server, Mr. Roppolo shared one screen which contained a listing of general project folders. *Mr. Janke represented that these were folders from the Frantz project and that all of these folders had been copied and produced to Lathan in the RSD 2015 Production.* After looking at the folder on the computer screen (which was very small and extremely difficult to read), I asked whether Mr. Roppolo would open one of the folders - - for example, the first. *Mr. Janke would not allow it.* I requested that Jacobs/CSRS's Counsel send me a copy of the screenshot of the purported Frantz project listing of general project folders. On July 9, 2021, I received an email with a screenshot of the displayed folder.

15. In the Webex video meeting, *Mr. Janke stated,* while Mr. Roppolo was present and after I read at least portions of Paragraph No. 3 of the Judgment, *that the single one-hour Webex video meeting on July 9, 2021 satisfied Jacobs/CSRS's obligations concerning Lathan's participation in the investigation and search of the emails and electronically stored data on the Servers.*

(Emphasis added.) Notably, there are multiple instances of the conduct and statements of counsel for Jacobs/CSRS, but no clear indication of Mr. Roppolo's actions that would establish the client's willful failure to comply.

Additionally, Lathan argued in its reply memorandum that Mr. Roppolo, as the Jacobs/CSRS representative assisting with the response to the June 2021 order and the "IT Director of CSRS," should have known that the search of emails failed to include the "jacobs.com" and "csrsonline.com" email domains belonging to Jacobs and CSRS, respectively. According to Lathan, prior document productions from the RSD indicated that Jacobs/CSRS representatives were using one of the following email domains: "jacobscsrs.com," "jacobs.com," "csrsonline.com," and "gotech-inc.com." Through responses to a third-party subpoena issued to "GOTECH," Lathan discovered that Mr. Roppolo assisted with transitioning "all users (gotech, Csrs, Jacobs)" to new email addresses, utilizing the "jacobscsrs.com" domain in February 2011. Mr. Roppolo's email stated that he planned to "export users['] existing mailboxes from current mail servers into a pst file and have them

work off that for old email" and that he set up "forwarding on [the] CSRS mail server for all CSRS Rsd users."

In its brief on appeal, Lathan notes that its multiple requests to participate in an on-site investigation "would likely have to be cleared through Jacobs/CSRS for access to the facility housing the Servers" and that Mr. Roppolo heard Lathan's counsel's analysis of the language in the June 2021 order. Reference is also made to Mr. Roppolo's knowledge of email domains searched and the existence of other domains. Lathan summarily concludes that the "evidence shows Jacobs/CSRS's (the client's) participation/acquiescence in the willful denial of Lathan's right to participate [in] the investigation and search ... and ... Jacobs/CSRS's bad faith decision to ignore the Trial Court's authority and the mandates of the [June 2021 order]."

Notwithstanding the noted involvement of Mr. Roppolo, there is no express proof that the client itself participated in or were responsible for the violation of the June 2021 order. Rather, paragraphs 14 and 15 of Ms. Gordon's affidavit indicate that *Mr. Janke*, counsel for Jacobs/CSRS, advised his client according to his own interpretation of the June 2021 order, and Mr. Roppolo followed counsel's advice. See *supra*. It is not clear to what extent, if any, the client, as opposed to its counsel, was at fault in failing to comply with the order.

This is in contrast with **Hutchinson**, 886 So.2d at 439 n.1, in which plaintiff was representing herself and her minor son after hiring and firing four different firms. Notwithstanding the fact that "[m]uch of the discovery was easily answerable even by a lay person," plaintiff completely failed to make a good faith effort to respond to discovery. **Id.** at 441. In fact, the Supreme Court noted that "Ms. Hutchinson is the client and is directly and solely responsible for the failure to comply with the discovery order," "she was ... dissatisfied with the representation of several attorneys," "she demanded self-representation despite the trial court's

30

warning that such procedure was unwise," and "she was given special consideration and extra time to respond to discovery." **Id.** at 440 (quoting **Hutchinson v. Westport Ins. Corp.**, 2004-138 (La. App. 5th Cir. 5/26/04), 875 So.2d 891, 897, writ granted, judgment rev'd, 2004-1592 (La. 11/8/04), 886 So.2d 438). Accordingly, the Supreme Court reinstated the trial court's order of dismissal due to the plaintiff's willful refusal to comply with the discovery order. **Id.** at 441.

Further, in **McWilliams**, 111 So.3d at 572-73, the Third Circuit specifically noted the defendants' participation in delay tactics in connection with the depositions of defendants' corporate representatives pursuant to La. Code Civ. P. art. 1442. The corporate representatives, who defendants deemed the most knowledgeable in their fields, did little to no work to prepare for their required testimonies, and defendants' own counsel indicated how involved the client was. **Id.** at 573.

We acknowledge that a majority of a three-judge panel of this court in **Morris**, 312 So.3d at 294, determined that the sanction of dismissal was not manifestly erroneous after the appellant's refusal to comply with discovery orders. However, we note that the majority in **Morris** did not address the fourth **Horton** factor of the analysis – whether the client participated in the violation. The court in **Morris** did specifically quote the applicable discovery requests, which entailed very basic and non-technical requests for information and documents concerning the appellant's claim of forced heirship, *i.e.*, her illness, disease, conditions, and/or sickness. **Id.** at 288. The appellant's responses contained minimal information with the only substantive response being that she suffered from "several" illnesses, diseases, and conditions, including but not limited to pancreatic cancer. No medical records or other documents were provided. **Id.** at 289.

The detailed discovery in this complex litigation involves, in part, the production of electronically stored information amassed over a period of more than

31

ten years, which is distinctively different from the **Morris** litigation. Additionally, the actions of the appellant in **Morris** affected the defendant's preparation for the scheduled trial, whereas here, no trial date has been scheduled. Lastly, the appellant in **Morris**, after having more than a year, failed to produce *any* documents and almost no substantive responses. Accordingly, we do not find the decision in **Morris** instructive.[24]

In this case, the evidence does not support a finding that the client, Jacobs/CSRS, willfully or in bad faith failed to comply with the June 2021 order; therefore, the fourth **Horton** factor is not met in this case. In light of our conclusion that two of the four **Horton** factors are not met in this case, we find merit in that portion of Jacobs/CSRS's Assignment of Error No. 1 concerning the sanctions of striking *all* of Jacobs/CSRS's defenses to Lathan's claims and prohibiting Jacobs/CSRS from presenting *any* evidence in support of such defenses, which are tantamount to entering a default judgment. See **BancorpSouth Bank**, 155 So.3d at 636; **Lirette**, 843 So.2d at 1143; **In re Medical Review Panel**, 775 So.2d at 1218. Such sanctions were not justified in this case, and the trial court abused its discretion in striking all of Jacobs/CSRS's defenses and prohibiting the introduction of evidence in support of those defenses.

### CONCLUSION

For the above and foregoing reasons, paragraph three of the February 1, 2022 judgment is vacated and amended to read as follows: "The Lathan Company is awarded reasonable expenses, including attorney fees, caused by the failure of Jacobs Project Management Co./CSRS Consortium to obey the June 8, 2021 order." Paragraph four of the February 1, 2022 judgment is vacated. Further, paragraph two

---

[24] In **Morris**, 312 So.3d at 291, the appellant's original appeal was dismissed by this court as abandoned for appellants' failure to file a brief, but the appeal was ultimately reinstated (and nearly abandoned again).

32

of the February 1, 2022 judgment striking all of Jacobs Project Management Co./CSRS Consortium's defenses to The Lathan Company's claims and prohibiting Jacobs Project Management Co./CSRS Consortium from presenting any evidence in support of such defenses is hereby reversed. The remaining portions of the February 1, 2022 judgment are affirmed, as amended. We remand this matter for further proceedings consistent with this opinion. Costs of this appeal are assessed one-half to The Lathan Company, and one-half to Jacobs Project Management Co./CSRS Consortium.

**REVERSED IN PART; VACATED IN PART; AMENDED IN PART; AFFIRMED IN PART, AS AMENDED; REMANDED.**